# Illinois Official Reports

## Appellate Court

---

### *Sierra Club v. Office of Mines & Minerals*, 2015 IL App (4th) 140405

---

| | |
|---|---|
| Appellate Court Caption | THE SIERRA CLUB; PRAIRIE RIVERS NETWORK; and OPENLANDS, Plaintiffs-Appellants, v. THE OFFICE OF MINES AND MINERALS of the Department of Natural Resources; THE OFFICE OF REALTY AND ENVIRONMENTAL PLANNING of the Department of Natural Resources; THE DEPARTMENT OF NATURAL RESOURCES; MARC MILLER, Director of Natural Resources in His Professional Capacity; and MISSISSIPPI SAND, LLC, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-14-0405 |
| Filed<br>Modified upon<br>denial of rehearing | March 5, 2015<br><br>May 15, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 12-MR-1021; the Hon. John P. Schmidt, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Mark Templeton and Mark Rohan, law student, both of University of Chicago Law School, and Albert Ettinger, all of Chicago, and Eric M. Schwing, of Springfield, for appellants.<br><br>Claire A. Manning (argued), of Brown, Hay & Stephens, LLP, of Springfield, for appellee Mississippi Sand, LLC.<br><br>William P. Hardy (argued), of Hinshaw & Culbertson LLP, of |

Springfield, and Russell R. Eggert, of Lathrop & Gage LLP, of Chicago, for other appellees.

Panel      JUSTICE TURNER delivered the judgment of the court, with opinion. Presiding Justice Pope and Justice Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1  Plaintiffs, the Sierra Club, Prairie Rivers Network, and Openlands, appeal the Sangamon County circuit court's April 16, 2014, dismissal of their first-amended petition for review of the actions of defendants, the Department of Natural Resources (Department); the Department's Office of Mines and Minerals; the Department's Office of Realty and Environmental Planning; and Marc Miller, the Department Director (collectively, Department defendants), in approving the surface-mining permit of defendant, Mississippi Sand, LLC (Mississippi Sand). On appeal, plaintiffs assert they have standing to challenge the Department defendants' actions. We affirm.

¶ 2          I. BACKGROUND
¶ 3      A. La Salle County Board Proceedings
¶ 4  In September 2011, Mississippi Sand submitted an application for a zoning special-use permit to the La Salle County department of environmental services and land use, seeking to conduct mining operations on a site in La Salle County. In January 2012, the La Salle County board approved a special-use permit for Mississippi Sand's mining operations.

¶ 5       B. Department Proceedings
¶ 6  On February 16, 2012, Mississippi Sand applied to the Department's Office of Mines and Minerals for a 10-year surface-mining permit to extract silica from the St. Peter Sandstone Formation, which is adjacent to the eastern entrance of Starved Rock State Park. With its application, Mississippi Sand included a reclamation plan and a reclamation map, which depicted its plans for restoring the land after completing the proposed open-pit mine. Mississippi Sand also submitted an "affected area" map. Those documents were required by section 5(e)(14) of the Surface-Mined Land Conservation and Reclamation Act (Mining Act) (225 ILCS 715/5(e)(14) (West 2012)). The application also attached several other documents, including an October 2011 threatened/endangered-species report for the area that was prepared by Planning Resources, Inc. Another document indicated that, in June 2011, Planning Resources, Inc., contacted the Department for use of the ecological compliance assessment tool (EcoCAT). According to the document, "EcoCAT uses databases, Geographic Information System mapping, and a set of programmed decision rules to determine if proposed actions are in the vicinity of protected natural resources." The other documents show La Salle County had consulted with the Department before issuing the special-use permit.

¶ 7 Michael Falter, supervisor of operations of the mine safety and training division of the Office of Mines and Minerals, forwarded Mississippi Sand's permit application to Pat Malone, a Department employee, for an endangered-species review. In a March 2012 e-mail, Malone informed Falter Mississippi Sand's surface-mining-permit application was reviewed in accordance with section 11 of the Illinois Endangered Species Protection Act (520 ILCS 10/11 (West 2012)), section 17 of the Illinois Natural Areas Preservation Act (Preservation Act) (525 ILCS 30/17 (West 2012)), and part 1075 of Title 17 of the Illinois Administrative Code (17 Ill. Adm. Code 1075). The e-mail then noted consultation for this surface-mining permit had been terminated.

¶ 8 Also in March 2012, a group of citizens sent Miller, the Department's director, a letter raising concerns about Mississippi Sand's proposed mine near Starved Rock State Park. Elliot Brinkman, as an employee of plaintiff Prairie Rivers Network, helped draft the aforementioned citizen letter. (The affidavit of Brinkman was attached to plaintiffs' motion for summary judgment.) Plaintiffs Sierra Club and Openlands sent letters to the Illinois Environmental Protection Agency regarding Mississippi Sand's permit application. Openlands indicated it had grave concerns about air and water pollution as well as the mine impacting historical and cultural resources. Openlands also made a request for documents related to the permit-approval process under the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2012)). In July 2012, the Department responded to the aforementioned letters. As to the citizen letter, Miller explained (1) the Department had carefully and seriously reviewed the application material to ensure full compliance with the law and (2) why they were not entitled to a public hearing under the Rivers, Lakes, and Streams Act (615 ILCS 5/4.9 *et seq.* (West 2012)). The acting director of the Department's Office of Mines and Minerals, Michael Woods, responded to Openlands's and Sierra Club's letters, addressing the concerns raised by the organizations and noting the Department was committed to ensuring the proposed mine operation is conducted within compliance of all applicable regulations. Also in July 2012, the Department denied Openlands access to the documents regarding the short- and long-term impact on the 13 statutory factors in the Mining Act (225 ILCS 715/5(g) (West 2010)), the documents and data that formed the basis for the Department's decision as to those 13 factors, and the final documents evaluating the overall impact of the mine and final consideration given to the 13 factors.

¶ 9 On June 4, 2012, the Department's Office of Mines and Minerals completed a permit review, analyzing Mississippi Sand's permit application. The review concluded by stating the Department had determined Mississippi Sand's plan complied with the Mining Act (225 ILCS 715/1 *et seq.* (West 2012)) and its implementing regulations, and thus a permit would be granted subsequent to Mississippi Sand providing the required reclamation bond and permit fee. On November 13, 2012, the Department's Office of Mines and Minerals issued Mississippi Sand a surface-mining permit.

¶ 10 C. Circuit Court Proceedings

¶ 11 On December 12, 2012, plaintiffs filed their petition for review of an administrative action. In addition to the Department, the Department's Office of Mines and Minerals, the Department's Office of Realty and Environmental Planning, and Director Miller, the petition also listed as defendants Woods, Falter, and Todd Rettig, as acting director of the Office of Realty and Environmental Planning. Under an agreed order in March 2014, the trial court

dismissed without prejudice Woods, Falter, and Rettig as defendants. In February 2013, both the Department defendants and Mississippi Sand filed motions to dismiss plaintiffs' petition. The next month, plaintiffs sought leave to file their first-amended petition. Under an agreed order, plaintiffs were granted leave to file their first-amended petition.

¶ 12 Plaintiffs' first-amended petition contains five counts. Count I asserts Mississippi Sand violated section 5(e) of the Mining Act (225 ILCS 715/5(e) (West 2010)) and applicable administrative regulations by submitting an incomplete, inaccurate, and deficient reclamation map, reclamation plan, and "affected area" map. The Department defendants violated the Mining Act by approving the flawed reclamation map, reclamation plan, and "affected area" map and then relying on them in the decision to approve the surface-mining permit. Count I noted numerous errors in the aforementioned documents. Count I sought (1) a declaration that the issuance of the mining permit was arbitrary and capricious because the Department defendants did not follow proper procedures, (2) a declaration the Department defendants could not grant the permit because Mississippi Sand did not present complete and accurate plans and maps, and (3) the voiding of the permit.

¶ 13 Count II alleged the Department's Office of Mines and Minerals violated the Mining Act by failing to adequately consider the 13 statutorily required factors contained in section 5(g) of the Mining Act (225 ILCS 715/5(g) (West 2010)). Count II sought (1) a declaration that the issuance of the mining permit was arbitrary and capricious and not in accordance with the law, (2) a declaration the Department defendants could not grant the permit without fully and fairly considering the 13 statutory factors required by the Mining Act and implementing regulations, and (3) the voiding of the permit.

¶ 14 Count III asserted the Department defendants violated the due-process rights of plaintiffs and their members. Plaintiffs noted they participated in the agency proceeding to the best of their ability but were hampered by the Department defendants' refusal to provide necessary information until after the mining permit was issued. They further noted the letters they sent to the Department regarding Mississippi Sand's permit application and argued those letters were not meaningfully addressed. Additionally, plaintiffs contended their property interests and the property interests of their members were at stake because the permit allowed Mississippi Sand to engage in activities that would emit silica dust, which would endanger the health, property values, and business assets of plaintiffs and their members. Plaintiffs asserted they were entitled to (1) notice of the details of Mississippi Sand's reclamation map, reclamation plan, and "affected area" map and (2) a predecision hearing but did not receive such. Additionally, plaintiffs assert that, if the Mining Act did not require notice or a predecision hearing, it was unconstitutional as applied to them. Count III requested the following declarations: (1) defendants violated plaintiffs' and their members' procedural due-process rights, (2) plaintiffs and their members and supporters whose protected property interests were endangered by the issuance of this mining permit were entitled to present their concerns to the Department defendants at a predecision hearing, and (3) the Mining Act and its implementing regulations as applied here violated plaintiffs' procedural due-process rights.

¶ 15 Count IV contended the Department defendants violated section 17 of the Preservation Act (525 ILCS 30/17 (West 2012)) by failing to fulfill consultation requirements. Plaintiffs argued defendants did not completely follow the administratively required process for compliance with section 17 of the Preservation Act. They also asserted the Department's

Office of Realty and Environmental Planning did not provide a justification for the termination of their consultation with the Office of Mines and Minerals, which again violated section 17 of the Preservation Act. Last, plaintiffs argued the Office of Realty and Environmental Planning relied on outdated and inaccurate information from the EcoCAT database to complete the consultations regarding Mississippi Sand's zoning-variance permit and thus violated its duty to protect nature preserves and registered areas. Count IV requested (1) a declaration that the issuance of the mining permit was arbitrary and capricious and not in accordance with the law, (2) a declaration the Department defendants did not perform a proper consultation under the Preservation Act, (3) a declaration the Department defendants cannot rely exclusively or significantly upon EcoCAT for determining whether a valid record of occurrence for a listed species or natural area exists within the vicinity of the proposed action, (4) an order requiring the Department's Office of Mines and Minerals to comply with the consultation requirements set forth in the Preservation Act through the writ of *mandamus*, and (5) the voiding of the permit.

¶ 16     Count V argued the totality of the circumstances illustrated in counts I, II, and IV showed arbitrary and capricious conduct. Count V sought (1) a declaration that the issuance of the mining permit was arbitrary and capricious and not in accordance with the law, (2) a declaration the Department defendants could not grant the permit because Mississippi Sand did not present complete and accurate plans and maps, (3) a declaration the Department defendants could not grant the permit without fully and fairly considering the 13 statutory factors required by the Mining Act and implementing regulations, (4) a declaration the Department defendants did not perform a proper consultation under the Preservation Act, (5) a declaration the Department defendants cannot rely exclusively or significantly upon EcoCAT for determining whether a valid record of occurrence for a listed species or natural area exists within the vicinity of the proposed action, and (6) the voiding of the permit.

¶ 17     Both the Department defendants and Mississippi Sand filed motions to dismiss plaintiffs' first-amended complaint under both sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2012)). In November 2013, plaintiffs filed a motion for summary judgment. In March 2014, both the Department defendants and Mississippi Sand filed motions to strike portions of plaintiffs' memorandum of law in support of their motion for summary judgment and certain exhibits attached to the summary judgment motion. In April 2014, plaintiffs filed a motion to supplement the administrative record provided by the Department defendants.

¶ 18     On April 16, 2014, the circuit court held a hearing on all pending motions. After hearing the parties' arguments, the court granted defendants' motions to dismiss, finding plaintiffs lacked standing to bring their causes of actions against defendants. The court explained plaintiffs were not a party under the statute. The court also noted the other pending motions were rendered moot by its decision on the motions to dismiss.

¶ 19     On May 14, 2014, plaintiffs filed a timely notice of appeal in compliance with Illinois Supreme Court Rule 303 (eff. May 30, 2008). Accordingly, this court has jurisdiction of this appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 20                                        II. ANALYSIS

¶ 21     Plaintiffs argue they have standing to challenge the Department's Office of Mines and Minerals' November 2012 issuance of a surface-mining permit to Mississippi Sand.

Specifically, plaintiffs argue they have (1) standing under the supreme court's decision in *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 524 N.E.2d 561 (1988); (2) a cause of action under the Administrative Review Law (735 ILCS 5/art. III (West 2012)); (3) a cause of action for review via a writ of *certiorari*, if they are not parties under the Administrative Review Law; (4) a cause of action in *mandamus* under the Preservation Act (525 ILCS 30/1 *et seq.* (West 2012)); and (5) a cause of action under the Illinois and United States Constitutions for due-process violations during the application process for the surface-mining permit. Defendants contend the circuit court's dismissal was proper.

¶ 22    The standing doctrine seeks to ensure that issues are raised only by those parties with a real interest in the outcome of the controversy. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23, 809 N.E.2d 1240, 1243 (2004). Under Illinois law, a lack of standing is an affirmative defense, and thus the defendants bear the burden to plead and prove a lack of standing. *Wexler*, 211 Ill. 2d at 22, 809 N.E.2d at 1243. Where a plaintiff lacks standing, the proceedings must be dismissed because the lack of standing negates the plaintiff's cause of action. *Wexler*, 211 Ill. 2d at 22, 809 N.E.2d at 1243.

¶ 23    Defendants raised the issue of standing in the portion of their motions to dismiss brought under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)). With a section 2-619 motion to dismiss, we deem as true all well-pleaded facts, together with all reasonable inferences that can be gleaned from the facts. *Cooney v. Rossiter*, 2012 IL 113227, ¶ 17, 986 N.E.2d 618. Moreover, courts interpret all of the pleadings and supporting documents in the light most favorable to plaintiffs, as they are the nonmoving parties. See *Cooney*, 2012 IL 113227, ¶ 17, 986 N.E.2d 618. This court reviews *de novo* a section 2-619 dismissal. *Cooney*, 2012 IL 113227, ¶ 17, 986 N.E.2d 618.

¶ 24    In this case, plaintiffs raise issues related to the Department defendants' approval of a surface-mining permit for Mississippi Sand. Section 13a of the Mining Act (225 ILCS 715/13a (West 2012)) provides "[a]ll final administrative decisions of the Department hereunder shall be subject to judicial review pursuant to the provisions of the Administrative Review Law." Section 3-102 of the Administrative Review Law (735 ILCS 5/3-102 (West 2012)) states the following:

> "Article III of this Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of Article III of this Act or its predecessor, the Administrative Review Act. This Article shall be known as the 'Administrative Review Law'. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not hereafter be employed."

As our supreme court has explained, when the Administrative Review Law is applicable, it eliminates any other statutory, equitable, or common-law remedies by which administrative determinations had previously been reviewed. *Marsh v. Illinois Racing Board*, 179 Ill. 2d 488, 493, 689 N.E.2d 1113, 1116 (1997). "Specifically, the legislature designed the Review Law 'to channel into a single procedure the judicial review of the decisions made by administrative agencies in particular cases.' " *Marsh*, 179 Ill. 2d at 493, 689 N.E.2d at 1116 (quoting *People ex rel. Naughton v. Swank*, 58 Ill. 2d 95, 102, 317 N.E.2d 499, 503 (1974)). Moreover, "[t]he purpose of administrative review is 'to make certain the agency has acted within its judicial bounds defined by law, to guard those statutory and constitutional rights

guaranteed to one subject to administrative action, and to ascertain whether the record supports the order issued.' " *Marozas v. Board of Fire & Police Commissioners*, 222 Ill. App. 3d 781, 791, 584 N.E.2d 402, 408-09 (1991) (quoting *Edwards v. City of Quincy*, 124 Ill. App. 3d 1004, 1012, 464 N.E.2d 1125, 1131 (1984)). Thus, any due-process claims are inherent in an administrative-review action. *Marozas*, 222 Ill. App. 3d at 791, 584 N.E.2d at 408.

¶ 25    In their first-amended petition, plaintiffs' due-process, *certiorari*, and *mandamus* claims were based on the Department defendants' actions during the permit-application process. Specifically, as to the *mandamus* claim, it was included in count IV, which also sought declaratory relief and the voidance of the permit based on the Department's handling of the permit-application process. In this case, the *mandamus* claim is clearly part of the administrative-review claims. Accordingly, the Administrative Review Law is plaintiffs' only avenue of review in this case.

¶ 26    Additionally, we note that, even if petitioners' had separately raised the *mandamus* claim in this case, the trial court's dismissal of it would still be proper. Under section 17 of the Preservation Act (525 ILCS 30/17 (West 2012)), plaintiffs can seek only to have the agency engage in the evaluation; no other remedy is available. *McHenry County Defenders, Inc. v. City of Harvard*, 384 Ill. App. 3d 265, 281-82, 891 N.E.2d 1017, 1033 (2008). Here, the record shows the Office of Mines and Minerals did do the evaluation, and petitioners only take issue with the manner in which it was done. Since the evaluation had already been completed, petitioners cannot state a cause of action for *mandamus*, seeking to compel the Department to do something it had already done.

¶ 27    In Illinois, a long-standing general rule exists that "administrative review is limited to *parties of record* before the administrative agencies and then only when their rights, duties or privileges are adversely affected by the decision." (Emphasis added.) *Board of Education of Roxana Community School District No. 1 v. Pollution Control Board*, 2013 IL 115473, ¶ 20, 998 N.E.2d 1256 (hereinafter, *Roxana*); see also *Williams v. Department of Labor*, 76 Ill. 2d 72, 78, 389 N.E.2d 1177, 1179 (1979); *Winston v. Zoning Board of Appeals*, 407 Ill. 588, 593, 95 N.E.2d 864, 868 (1950). Moreover, we note the term "party of record" is also used in section 3-107(a) of the Administrative Review Law (735 ILCS 5/3-107(a) (West 2012)), which specifically requires "the administrative agency and all persons, other than the plaintiff, who were *parties of record* to the proceedings before the administrative agency shall be made defendants." (Emphasis added.) Plaintiffs contend the above rule sets forth the requirements for a cause of action under the Administrative Review Law and not standing. Regardless of labels, the aforementioned rule is clearly a threshold requirement that plaintiffs must satisfy for review under the Administrative Review Law, which, as we explained, is plaintiffs' only means of review.

¶ 28    Plaintiffs argue *Greer* is the applicable case to determine standing and not the long-standing rule. In *Greer*, 122 Ill. 2d at 492, 524 N.E.2d at 574-75, our supreme court found "standing in Illinois requires only some injury in fact to a legally cognizable interest." Specifically, the claimed injury, which may be actual or threatened, must be (1) distinct and palpable, (2) fairly traceable to the defendant's actions, and (3) substantially likely to be prevented or redressed by the grant of the requested relief. *Greer*, 122 Ill. 2d at 492-93, 524 N.E.2d at 575. Plaintiffs emphasize the standing test in *Greer* did not contain any "party" requirement.

¶ 29 However, the *Greer* decision gives no indication it was brought under the Administrative Review Law. In *Greer*, 122 Ill. 2d at 470, 524 N.E.2d at 564, the plaintiffs filed suit against the Illinois Housing Development Authority (Housing Authority) for approving mortgage financing for a housing-rehabilitation project. They alleged (1) the approval violated the Housing Authority's statutory duty to promote economic heterogeneity and sought a declaratory judgment the Housing Authority not proceed with the funding, (2) the Housing Authority's actions did not comply with statutory mandates and were arbitrary, and (3) the Housing Authority failed to give any consideration to statutory requirements for economic integration; and plaintiffs requested the issuance of a common law writ of *certiorari* based on all of the alleged facts. *Greer*, 122 Ill. 2d at 485-86, 524 N.E.2d at 571-72. Thus, the facts of *Greer* do not indicate the plaintiffs brought the suit under the Administrative Review Law. In fact, in addressing standing, the supreme court referred to the plaintiffs' suit as a challenge to the legality of a governmental action. See *Greer*, 122 Ill. 2d at 487-88, 524 N.E.2d at 572-73. The *Greer* court never addressed the applicability of the Administrative Review Law. Additionally, in the supreme court's later decision in *Glisson v. City of Marion*, 188 Ill. 2d 211, 217, 720 N.E.2d 1034, 1038 (1999), where it applied the standing test set forth in *Greer*, the plaintiff did not file a petition for administrative review. Thus, we agree with the Second District that nothing in *Greer* overruled the general requirement a party seeking review of an administrative agency's decision must have been a party of record to the agency's proceeding. See *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 683, 941 N.E.2d 347, 361 (2010).

¶ 30 Accordingly, the issue is whether plaintiffs were a party of record. Plaintiffs argue they were based on the (1) dictionary definition of "party," (2) fact the Department responded to their letters regarding the permit application, and (3) structure of the Mining Act. Defendants argue this court should look to the language of the Mining Act, which does not grant plaintiffs party status.

¶ 31 Plaintiffs' first argument is irrelevant. As noted above, the supreme court has used the term "parties of record" (*Roxana*, 2013 IL 115473, ¶ 20, 998 N.E.2d 1256), and so does the Administrative Review Law (735 ILCS 5/3-107(a) (West 2012)). Thus, whether plaintiffs are parties under a general definition does not determine whether they are "parties of record."

¶ 32 Plaintiffs next argue they are parties of record because the Department responded to their letters and those responses were included in the administrative record submitted by the Department in this case. However, plaintiffs were not the only ones that submitted letters to the Department regarding this permit. In March 2012, a group of dozens of citizens sent Miller a letter voicing concerns about Mississippi Sand's permit application, and Miller responded. While plaintiffs attached those documents to their first-amended complaint, the administrative record does not contain those letters. The administrative record also lacks the letters sent by plaintiffs Sierra Club and Openlands. Since the administrative record lacks the complaint letters and at least one response to the complaint letters, we disagree with plaintiffs the mere fact the responses by the Department's Office of Mines and Minerals to plaintiffs' letters were included in the administrative record makes them parties of record in Mississippi Sand's permit-application proceedings.

¶ 33 Last, we turn to the language of the Mining Act. Under sections 5(f) and 17(f)(3) of the Mining Act (225 ILCS 715/5(f) (West 2010); 225 ILCS 715/17(f)(3) (West 2012)), a public hearing on a permit application can only take place when the county board of a county to be

affected under a proposed permit has requested a public hearing. As in this case, when a public hearing is not requested by said county board, then sections 5(g) and 17(f)(3) of the Mining Act (225 ILCS 715/5(g) (West 2010); 225 ILCS 715/17(f)(3) (West 2012)) allow only written comment from the county board. In support of their argument, plaintiffs cite the following language from section 5(f) (225 ILCS 715/5(f) (West 2010)): "procedural rules shall include provisions for reasonable notice to all parties, including the applicant, and reasonable opportunity for all parties to respond by oral or written testimony, or both, to statements and objections made at the public hearing. County boards and the public shall present their recommendations at these hearings." However, as stated, this case did not involve a public hearing, and thus the aforementioned language does not apply here. We find the language of the Mining Act provides that, when a county board has not requested a public hearing, the general public has no statutory right to comment on the permit-application process. Moreover, we decline to infer the public has a right to participate in permit-application proceedings under the Mining Act where another permit-application statute expressly allows for such participation and the Mining Act does not. See 225 ILCS 720/2.04(d) (West 2012). When the affected county board does not request a public hearing under section 5(f), the legislature did not provide for the involvement of any other parties besides the affected county board in the permit-application process. Accordingly, under the language of the Mining Act, plaintiffs are not parties of record to Mississippi Sand's permit-application process.

¶ 34    Plaintiffs further argue case law demonstrates that party status is not limited to just those entities expressly named as parties. In support of their argument, they cite this court's decision in *Kemp-Golden v. Department of Children & Family Services*, 281 Ill. App. 3d 869, 667 N.E.2d 688 (1996), claiming an analysis of the plaintiff's participation in that case would have been unnecessary if one could not be a party unless the statute explicitly provided for party status. In *Kemp-Golden*, 281 Ill. App. 3d at 877, 667 N.E.2d at 693, this court rejected several of the plaintiff's arguments, including her claim "her participation in the administrative hearing amounted to *de facto* intervention to which no one objected and, consequently, vested her with party status." The plaintiff had filed the report of abuse and testified as a witness at the administrative hearing, as she was required to do by statute (325 ILCS 5/10 (West 1994)). *Kemp-Golden*, 281 Ill. App. 3d at 877, 667 N.E.2d at 693-94. This court was simply addressing one of the plaintiff's arguments when it addressed the plaintiff's role at the administrative hearing. Even if the extent of participation in the administrative process was a consideration in determining party status, the plaintiff's participation in *Kemp-Golden* was significantly greater than the plaintiffs' roles in this case, and thus it does not support plaintiffs' position.

¶ 35    Plaintiffs also cite *Williams*, noting that even when a person is not explicitly granted a role in the proceeding, the person may still be a party. There, in March 1977, the Board of Review of the Department of Labor found the claimant was ineligible for unemployment benefits. *Williams*, 76 Ill. 2d at 75, 389 N.E.2d at 1178. By way of a supplemental proceeding that began in November 1977, the Board of Review of the Department of Labor granted the claimant's attorney's request for approval of his attorney fees at a reduced amount. *Williams*, 76 Ill. 2d at 75-76, 389 N.E.2d at 1178. Our supreme court noted the claimant was clearly a party to the Board's decision that denied him unemployment benefits and found he was also a party to its decision that limited the fee of his attorney. *Williams*, 76

Ill. 2d at 79, 389 N.E.2d at 1180. This case cuts against plaintiffs' position because it shows the importance of being a named party in the initial proceedings.

¶ 36 Since plaintiffs were not parties to the administrative decision that they seek to review, we find plaintiffs cannot seek review of the Department's decision to approve Mississippi Sand's surface-mining permit. Accordingly, the trial court properly dismissed plaintiffs' first amended petition for review.

¶ 37                                                    III. CONCLUSION

¶ 38 For the reasons stated, we affirm the Sangamon County circuit court's dismissal of plaintiffs' first amended petition for review.

¶ 39 Affirmed.