2016 IL App (4th) 150582

NO. 4-15-0582

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| SAVE OUR SANDY, an Unincorporated Association, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| THE DEPARTMENT OF AGRICULTURE; PHILIP | ) | No. 15CH76 |
| NELSON, as Acting Director of Agriculture; VMC | ) | |
| MANAGEMENT CORPORATION; and SANDY | ) | |
| CREEK LANE LLC, | ) | Honorable |
| | ) | John P. Schmidt, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.
Justice Harris concurred in the judgment and opinion.
Justice Pope specially concurred, with opinion.

**OPINION**

¶ 1        In early 2014, defendants VMC Management Corporation and Sandy Creek Lane

LLC (collectively VMC) filed a "Notice of Intent to Construct" with the Illinois Department of

Agriculture (Department).  The notice proposed the construction of a hog farm with 3,384 animal

units.  In April 2014, at the request of Marshall County, the Department held a public

informational meeting regarding the proposed hog farm.  In October 2014, the Department

determined the proposed hog farm "more likely than not" met the requirements of the Livestock

Management Facilities Act (Livestock Act or Act) (510 ILCS 77/1 to 999 (West 2014)).  In

February 2015, plaintiff, Save Our Sandy, filed a petition for *certiorari*, seeking review of the

Department's decision.  The Department and VMC filed separate motions to dismiss pursuant to

section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2014)). The trial court granted the motions to dismiss, finding plaintiff did not have standing to seek review of the Department's decision because plaintiff was not a party of record in the administrative proceedings.

¶ 2 Plaintiff appeals, arguing standing requires only some injury to a legally cognizable interest, a standard which plaintiff has met. Specifically, plaintiff argues it need not be a party of record in the administrative proceedings to assert standing. Alternatively, plaintiff argues some of its members were parties of record to the administrative proceeding and therefore have standing. We disagree.

¶ 3                                I. BACKGROUND

¶ 4 In February 2014, VMC filed a "Notice of Intent to Construct" with the Department. The notice proposed the construction of a hog farm with 3,384 animal units in Marshall County. The application also contained the names and addresses of residents who were within the setback limits contained within the Livestock Act. In April 2014, at the request of Marshall County, the Department held a public informational meeting regarding the proposed hog farm. Some members of Save Our Sandy testified and presented written evidence at the informational meeting.

¶ 5 In October 2014, the Department determined the proposed hog farm "more likely than not" met the requirements of the Livestock Act (510 ILCS 77/12.1(a) (West 2014)). In November 2014, plaintiff filed a petition for reconsideration, asking the Department to reconsider its approval of VMC's notice of intent to construct. In January 2015, the Department denied the petition, finding plaintiff, as a nonparty, did not have standing to seek stay or reconsideration under the applicable administrative regulations.

¶ 6        In February 2015, plaintiff, Save Our Sandy, filed a petition for *certiorari*, seeking review of the Department's determination the proposed hog farm "more likely than not" met the provisions of the Livestock Act.  The Department and VMC filed separate motions to dismiss pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2014)), arguing plaintiff did not have standing to seek administrative review.  In July 2015, the trial court granted the motions to dismiss.

¶ 7        This appeal followed.

¶ 8                                II. ANALYSIS

¶ 9        Plaintiff appeals, arguing the trial court erred in granting the motions to dismiss. Defendants argue plaintiff does not have standing to seek review because it was not a party to the administrative proceeding.  Plaintiff contends the "party" requirement is limited to review under the Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2014)).  Plaintiff argues it has suffered an injury to a legally cognizable interest and nothing more is required to show standing for a petition for a writ of *certiorari*.

¶ 10        "A common law writ of *certiorari* is a general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review."  *Hanrahan v. Williams*, 174 Ill. 2d 268, 272, 673 N.E.2d 251, 253 (1996).  The Livestock Act neither adopts the procedures set forth in the Administrative Review Law nor limits review; therefore judicial review may be obtained by a writ of *certiorari*.  510 ILCS 77/1 to 999 (West 2014).  See *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 681, 941 N.E.2d 347, 360 (2010) (hereinafter *Helping Others*).

¶ 11		"Under Illinois law, a lack of standing is an affirmative defense, and thus the defendants bear the burden to plead and prove a lack of standing." *Sierra Club v. Office of Mines & Minerals*, 2015 IL App (4th) 140405, ¶ 22, 29 N.E.3d 1068.  Accordingly, VMC and the Department raised the standing issue in their respective motions to dismiss under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2014)).  With a section 2-619 motion to dismiss, we view all well-pleaded facts, together with reasonable inferences drawn from the facts, as true. *Sierra Club*, 2015 IL App (4th) 140405, ¶ 23, 29 N.E.3d 1068.  We interpret all the pleadings and supporting documents in the light most favorable to the nonmoving party. *Id.* Our review of a section 2-619 motion to dismiss is *de novo*. *Id.*

¶ 12		We first consider the provisions of the Livestock Act and the relevant administrative regulations.

¶ 13			A. The Livestock Management Facilities Act

¶ 14		The Livestock Act governs the procedures and standards for Department oversight of the construction of livestock production facilities.  510 ILCS 77/1 to 999 (West 2014).  The purpose of the Act is to ensure Illinois maintains an economically viable livestock industry while also protecting the environment.  510 ILCS 77/5(b) (West 2014).  The Act requires an owner or operator to file a "notice of intent to construct" a livestock facility with the Department prior to construction.  510 ILCS 77/11(a) (West 2014).  When the Department receives a notice of intent to construct a facility such as the one at issue in this case (*i.e.*, a facility with more than 1,000 animal units), the Department must send the notice to the appropriate county board and publish public notice in a newspaper within the county.  510 ILCS 77/12(a) (West 2014).

¶ 15        The county board may request an "informational meeting" at its discretion, or the county board can be compelled to request one when petitioned to do so by 75 or more county residents. 510 ILCS 77/12(a) (West 2014). The Act requires notice to the public of the informational meeting. Following the informational meeting, the county board must submit "an advisory, non-binding recommendation" as to whether the livestock facility meets the sitting criteria. 510 ILCS 77/12(b) (West 2014). The relevant administrative regulation requires the Department to allow members of the public to ask questions and present oral or written comments concerning the proposed livestock facility. 8 Ill. Adm. Code 900.405(d) (2003). Following the informational meeting, receipt of the county board's recommendation, and any further information necessary, the Department issues a final determination as to whether the proposed livestock facility "more likely than not" meets the requirements of the Livestock Act. 510 ILCS 77/12.1(a) (West 2014). The relevant administrative regulation provides the procedure for stay or reconsideration of any final determination "shall be as provided for in the Department's administrative rules." 8 Ill. Adm. Code 900.407(f) (2003). In turn, the germane regulation governing petitions for reconsideration provides, "[t]he respondent in any contested case may request reconsideration." 8 Ill. Adm. Code 1.114 (1992).

¶ 16        The Livestock Act also prescribes setbacks, which, in pertinent part, dictate the distance a livestock facility must be from (1) a populated area, and (2) an occupied residence. 510 ILCS 77/35(c)(4) (West 2014). Populated area is defined as "any area where at least 10 inhabited non-farm residences are located or where at least 50 persons frequent a common place of assembly or a non-farm business at least once per week." 510 ILCS 77/10.60 (West 2014).

¶ 17        One resident lived within the "occupied residence" setback distance of 1,760 feet, and he waived the setback distance. Some members of Save Our Sandy lived within the

"populated area" setback distance.  Plaintiff contends this "populated area" setback gave them the right to notice of construction and, therefore, made them parties to the administrative proceedings.  We address this argument below.

¶ 18                                    B. Standing

¶ 19         Plaintiff asserts it need not have been a party to the administrative proceedings in order to have standing to seek administrative review in the circuit court.  According to plaintiff, the "party" requirement comes solely from the Administrative Review Law, which is inapplicable to proceedings under the Livestock Act.

¶ 20         Plaintiff relies on *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492-93, 524 N.E.2d 561, 574-75 (1988), in support of its argument that common-law standing requires only some injury in fact to a legally cognizable interest.  *Greer* involved the Illinois Housing Development Act (Housing Act), which, among other things, created the Illinois Housing Development Authority (Authority).  *Id.* at 477, 524 N.E.2d at 567.  The Housing Act was created in response to public-housing programs which "segregate[d] poor people in large, ghetto-like high-rises, which inevitably became focal points for crime, delinquency, illegitimacy, and disease."  *Id.* at 472, 524 N.E.2d at 565.  The purpose of the Housing Act was to eliminate these "slums" by providing assistance for low and moderate income housing.  *Id.* at 477, 524 N.E.2d at 567.  The Authority was charged with ensuring this housing would be available to persons of varied economic means to eliminate the large concentrations of poor people in large, ghetto-like high-rises.  *Id.* at 474, 524 N.E.2d at 566.

¶ 21         In *Greer*, the Authority approved funding for the development of 48 housing units, all of which would be available for rental only to very low income families.  *Id.* at 481, 524 N.E.2d at 569-70.  The plaintiffs, property owners near the approved housing development,

- 6 -

brought suit, arguing they suffered injury in the form of diminution of property values due to the Authority's violation of its statutory duty to promote economic heterogeneity. *Id.* at 485-86, 524 N.E.2d at 571-72. The Authority, in part, asserted the plaintiffs did not have standing because they could not show (1) injury in fact, or (2) that their interest was within the zone of interests the Housing Act arguably sought to protect. *Id.* at 487, 524 N.E.2d at 572. The plaintiffs argued the "zone of interests" test was not a requirement for standing under Illinois law. *Id.* at 487-88.

¶ 22    Thus, the *Greer* court addressed the question of whether to adopt the "zone-of-interests" test used by federal courts in determining whether a plaintiff had standing to challenge administrative action. *Id.* at 491-92, 524 N.E.2d at 574. The *Greer* court determined the zone-of-interests test added nothing to the doctrine of standing under Illinois law. *Id.*

¶ 23    The *Greer* court held "that standing in Illinois requires only some injury in fact to a legally cognizable interest." *Id.* at 492, 524 N.E.2d at 574-75. That injury, "whether actual or threatened [citation], must be: (1) distinct and palpable [citation]; (2) fairly traceable to the defendant's actions [citation]; and (3) substantially likely to be prevented or redressed by the grant of the requested relief [citations]." (Internal quotation marks omitted.) *Id.* at 492-93, 524 N.E.2d at 575. The court went on to note there must be an actual controversy between adverse parties such that declaratory relief would actually affect the plaintiff's claim, status, or right. *Id.* at 493, 524 N.E.2d at 575. Finally, the court found a diminution in property values was a legally cognizable interest and held the plaintiffs had standing. *Id.*

¶ 24    In our view, *Greer* definitively stated the "zone of interests" test was not used in standing analysis under Illinois law. *Greer* did *not* address the question presented to this court—whether, under the common law, a plaintiff must be a party to an administrative action to have standing to seek administrative review of that action.

¶ 25    Defendants argue it is well settled in Illinois that anyone seeking administrative review must have been party to the administrative proceedings.  In support, the Department cites only cases in which the court reviewed administrative action under the Administrative Review Law.  See, *e.g.*, *Sierra Club*, 2015 IL App (4th) 140405, ¶ 24, 29 N.E.3d 1068; *Kemp-Golden v. Department of Children & Family Services*, 281 Ill. App. 3d 869, 873, 667 N.E.2d 688, 691 (1996).  VMC cites *People ex rel. Solon v. Lower*, 254 Ill. 306, 313, 98 N.E. 557, 559 (1912), for the proposition "that to entitle one to sue out a writ of *certiorari* he must have been a party to the proceeding of which he seeks review and must have an interest in the proceeding that is direct and immediate."  For the same proposition, VMC also cites *People ex rel. Leach v. County of Vermilion County*, 210 Ill. 209, 71 N.E. 368 (1904).

¶ 26    Both defendants rely on *Helping Others*, 406 Ill. App. 3d 669, 941 N.E.2d 347.  In *Helping Others*, the Second District addressed whether a citizens group opposed to the construction of a hog facility had standing to appeal the Department's determination that the hog farm "more likely than not" met the requirements of the Livestock Act.  *Id.* at 672, 941 N.E.2d at 352.  The Second District held nothing in the Livestock Act granted the plaintiffs status as a party of record.  *Id.* at 682, 941 N.E.2d at 360-61.  The plaintiffs argued, as they do in the instant case, that the "part[y] of record" requirement was restricted to the Administrative Review Law.  *Id.* at 682, 941 N.E.2d at 361.  The Second District disagreed because common-law methods of administrative review did not grant courts greater authority than when statutory methods apply.  *Id.*

¶ 27    As in the instant case, the *Helping Others* plaintiffs asserted they had standing under *Greer*.  *Id.* at 682, 941 N.E.2d at 361.  The Second District court distinguished *Greer* on the basis of the nature of the action.  In the Second District's view, *Greer* involved a

"nonadjudicatory administrative decision," while the *Helping Others* action was a "quasi-judicial decision as to whether a party has satisfied specific statutory factors." (Internal quotation marks omitted.) *Id.* at 683, 941 N.E.2d at 361.  The *Helping Others* court held *Greer* did nothing to change the general requirement that a party seeking administrative review must have been a party of record to the administrative proceeding.  *Id.* (citing *Williams v. Department of Labor*, 76 Ill. 2d 72, 389 N.E.2d 1177 (1979)).

¶ 28    Plaintiff contends the only other decision to consider the *Helping Others* standing decision rejected it.  See *CBS Outdoor, Inc. v. Department of Transportation*, 2012 IL App (1st) 111387, 970 N.E.2d 509.  This is a disingenuous characterization of *CBS Outdoor*.  First, the *CBS Outdoor* court found the issue of standing had been forfeited.  *Id.* ¶ 24.  However, the court did find the plaintiff had standing and considered the merits of the appeal.  *Id.* ¶ 25.  In *CBS Outdoor*, the plaintiff and one of the defendants, Diehl, had an agreement whereby the plaintiff could keep a billboard on Diehl's property until September 26, 2009.  *Id.* ¶ 2.  On June 26, 2009, Diehl applied for a permit from the Illinois Department of Transportation (IDOT) for the billboard.  *Id.* ¶ 3.  That permit was ultimately denied.  The plaintiff then filed an application for a permit for a billboard on a different piece of property owned by Diehl a short distance away.  Thereafter, Diehl "amended" his original application.  *Id.* ¶ 15.  The plaintiff submitted a memorandum to IDOT arguing Diehl's amendment was untimely.  *Id.* ¶ 16.  IDOT thereafter granted Diehl's permit and denied the plaintiff's permit because there was an existing permit for a billboard within a certain distance.  That "existing permit" was Diehl's untimely amended application.  *Id.* ¶ 18.

¶ 29    Although the plaintiff in *CBS Outdoor* was not technically a "party" to Diehl's application for a permit, the facts make clear the plaintiff and Diehl stood in a position adverse to

each other and IDOT's actions affected the plaintiff's legal rights and interests. Unlike the instant case, the plaintiff was involved in administrative proceedings before IDOT and IDOT's actions on Diehl's applications adversely affected the legal rights and interests of the plaintiff related to the IDOT's authority. The *CBS Outdoor* court *never even mentioned* the Second District's standing decision in *Helping Others*. We hardly find it accurate to suggest the *CBS Outdoor* court roundly *rejected* that decision. Moreover, we find the nature of the interest asserted by the plaintiff in *CBS Outdoor* substantially different from the nature of the interest asserted in the instant case and in *Helping Others*.

¶ 30        In this case, plaintiff asserts diminution of property values as its "injury" to a "legally cognizable interest." While we agree that is indeed an injury, we think this position ignores some pertinent principles of the standing doctrine.

¶ 31        The standing doctrine ensures only those parties with a real interest in the outcome of a controversy raise issues for review. *Sierra Club*, 2015 IL App (4th) 140405, ¶ 22, 29 N.E.3d 1068. "The gravamen of standing is a real interest in the outcome of the controversy," (*Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 23, 43 N.E.3d 923), and that interest must be more than mere concern about the outcome. *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 376, 362 N.E.2d 298, 301 (1977). "The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Id.* at 375, 362 N.E.2d at 300. That dispute must "touch the legal relations of parties who stand in a position adverse to one another." *Id.* at 376, 362 N.E.2d at 301. Standing is a component of justiciability and must be decided on a case-by-case basis. *Ferguson v. Patton*, 2013 IL 112488, ¶ 22, 985 N.E.2d 1000.

¶ 32          In the instant case, at the administrative proceeding, plaintiff was given the opportunity to present testimony and evidence regarding the Livestock Act siting criteria. However, nothing about that proceeding "touched the legal relations" between VMC and plaintiff. That proceeding was an informational meeting, designed to allow members of the community to (1) ask questions of the owner or operator of the proposed livestock facility, (2) ask questions of the Department, and (3) present testimony or evidence relevant to the Livestock Act criteria. Nothing in the Livestock Act gave the Department the power to adjudicate or otherwise make a determination regarding plaintiff's legal rights or property interests. Unlike the plaintiff in *CBS Outdoor*, the Department in this case had no authority to take any action that directly affected plaintiff's asserted legal interests. We find the attenuation here to be sufficient to deprive plaintiff of standing.

¶ 33          This does not necessarily mean that, for the purposes of standing in the context of administrative review not governed by the Administrative Review Law, the aggrieved party *must* be a party of record to the administrative proceeding. However, in this case, more is needed. The Department must have some sort of authority, granted by statute, to take action which would directly affect the asserted interest. For example, our standing determination in this case might well have been different if plaintiff's property were within an applicable setback over which the Department had statutory authority to take action pursuant to a request for a setback decrease. 510 ILCS 77/35(f) (West 2014). However, the members of Save Our Sandy who do live within the "populated area" setback unfortunately cannot assert this as a basis for standing. The "populated area" setback is only applicable when there is actually a populated area. The area at issue here clearly does not meet the qualifications of a populated area. The Livestock Act defines "populated area" as "any area where at least 10 inhabited non-farm residences are located

- 11 -

or where at least 50 persons frequent a common place of assembly or a non-farm business at least once per week." 510 ILCS 77/10.60 (West 2014). The record shows the area at issue has neither 10 inhabited non-farm residences, nor a common place of assembly or non-farm business which 50 persons frequent on a weekly basis. Accordingly, the populated area setback is inapplicable.

¶ 34        This position is supported by the cases VMC cites from the early twentieth century, *Solon*, 254 Ill. 306, 98 N.E. 557, and *Leach*, 210 Ill. 209, 71 N.E. 368. Both cases involved writs of *certiorari* governed by common-law standing requirements and both required a plaintiff to "have been a party to the proceeding of which he seeks review and must have an interest in the proceeding that is direct and immediate." *Solon*, 254 Ill. at 313, 98 N.E. at 559. See *Leach*, 210 Ill. at 212, 71 N.E. at 369. This seems to indicate that, at the common law, *certiorari* included party status as a requirement for standing. Because no recent court has directly addressed whether the common law requires party status, we find these citations persuasive. (The court in *Helping Others* simply assumed standing required party status and relied on cases which applied the Administrative Review Law, therefore we do not find the analysis to be sufficiently on point.) However, as indicated above, we do not find the common law *necessarily* requires a person be a party of record to the administrative proceedings. Again, matters of justiciability and standing must be decided on a case-by-case basis. *Ferguson*, 2013 IL 112488, ¶ 22, 985 N.E.2d 1000. Accordingly, in this case, we conclude plaintiff has not shown a sufficient interest, such that there exists a "concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof," to assert standing to seek reconsideration of the Department's determination VMC's notice of intent to construct "more likely than not" met

the Livestock Act's requirements. *Underground Contractors Ass'n*, 66 Ill. 2d at 375, 362 N.E.2d at 300.

¶ 35                                    III. CONCLUSION

¶ 36            For the reasons stated, we affirm the trial court's judgment.

¶ 37            Affirmed.

¶ 38          JUSTICE POPE, specially concurring:

¶ 39          While I agree we are bound by the law cited in the majority decision to deny plaintiff's standing, I write separately to highlight a very real problem with legislation like that at issue here. Under the Livestock Act, if VMC were denied a permit, it would have the right to seek administrative review of that decision. However, if the permit is granted to VMC erroneously, only a person within the occupied residence setback area of 1,760 feet would have the right to object. No one else could do so, even if their property or health would be negatively impacted. Instead, the Illinois Attorney General's position is such people would have the right to bring a nuisance action after the facility was constructed or an anticipatory nuisance action to seek redress for any injuries they might suffer.

¶ 40          Our supreme court noted in *Board of Education of Roxana Community School District No. 1 v. Pollution Control Board*, 2013 IL 115473, ¶ 25, 998 N.E.2d 1256, 1263:

> "We recognize, of course, that legitimate concerns may arise when the only parties permitted to participate in the regulatory process are regulators and the companies they regulate. That, however, is a matter for the General Assembly. The responsibility for the wisdom of legislation rests with the legislature, and courts may not rewrite statutes to make them consistent with the court's idea of orderliness and public policy. [Citation.]"

¶ 41          Disagree though I may with the legislation, nevertheless, I am bound to follow the law. Citizens need to address these issues directly with their legislators.