(Nos. 94127, 94128, 94171 cons.—

SAUL R. WEXLER *et al.*, Appellees and Cross-Appellants, v. THE WIRTZ CORPORATION *et al.*, Appellants and Cross-Appellees.

*Opinion filed April 1, 2004.—Rehearing denied May 24, 2004.*

FREEMAN, J., took no part.

Michael M. Conway and Sunita Kini, of Foley & Lardner, of Chicago, for appellant and cross-appellee The Wirtz Corporation, d/b/a Judge & Dolph, Ltd.

Anne G. Kimball, Amber L. Achilles and Sarah L. Olson, of Wildman, Harrold, Allen & Dixon, L.L.P., of

Chicago, for appellant and cross-appellee Anheuser-Busch, Inc.

Lisa Madigan, Attorney General, of Springfield (Gary Feinerman, Solicitor General, and Erik G. Light, Assistant Attorney General, of Chicago, of counsel), for appellants and cross-appellees Glen Bower, Daniel Hynes and Judy Baar Topinka.

Mitchell A. Orpett and Arla G. Rosenthal, of Tribler, Orpett & Meyer, P.C., of Chicago, for appellees and cross-appellants.

JUSTICE RARICK delivered the opinion of the court:

Before us is a class action challenging the constitutionality of Public Act 91—38, which amended provisions of the Liquor Control Act of 1934 (235 ILCS 5/1—1 *et seq.* (West 2000)), the State Finance Act (30 ILCS 105/1 *et seq.* (West 2000)) and the School Construction Law (105 ILCS 230/5—1 *et seq.* (West 2000)). On cross-motions for partial summary judgment, the circuit court of Cook County held that the statute violated the three readings and the single subject clauses of article IV, section 8(d), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 8(d)). It rejected the contention that the statute violated our constitution's uniformity clause (Ill. Const. 1970, art. IX, § 2). Defendants appealed. Plaintiffs cross-appealed. An intervening defendant filed a separate appeal. Because the circuit court's judgment invalidated a state statute, the appeals were taken directly to our court. 134 Ill. 2d R. 302(a). For the reasons that follow, we reverse and remand with directions to dismiss.

Public Act 91—38, the statute challenged in this case, amended section 8—1 of the Liquor Control Act (235 ILCS 5/8—1 (West 2000)) by creating a single tax rate for manufacturers of wine and by raising the state liquor tax, which is levied on manufacturers and importing

distributors of alcoholic beverages. It amended the State Finance Act (30 ILCS 105/1 *et seq.* (West 2000)) to authorize the expenditure of funds from the General Revenue Fund for public infrastructure improvements. In addition, it amended the School Construction Law (105 ILCS 230/5—1 *et seq.* (West 2000)) to authorize certain grants for school construction and maintenance projects.

Shortly after the Public Act 91—38 took effect, an attorney named Saul Wexler brought an action in the circuit court of Cook County to challenge its constitutionality. Wexler is neither a manufacturer nor an importing distributor of alcoholic beverages, nor does he have anything to do with public infrastructure or school construction or maintenance projects. He challenged the law as a retail purchaser of Smirnoff vodka. He claimed that he bought several bottles of the vodka at Evanston First Liquors after the statutory amendment took effect. Wexler asserted that he had the right to challenge the law because the higher tax was passed along to retailers and then to consumers in the form of higher prices. As a result, he had to pay more for his Smirnoff vodka than he would have absent the tax increase.

Wexler's complaint named as defendants Sankar, Inc., the company that owned Evanston First Liquors; the Wirtz Corporation, d/b/a Judge and Dolph, the importing distributor that supplied the vodka to Sankar, Inc.; Glen Bower, in his official capacity as Director of Revenue; Daniel Hynes, in his official capacity as Comptroller of the State of Illinois; and Judy Baar Topinka, in her official capacity as State Treasurer. The circuit court granted preliminary injunctive relief to Wexler, denied the state defendants' claim that Wexler lacked standing to challenge the law, and certified a plaintiff class. Various other motions were considered and additional orders were entered. Cross-motions for summary judgment were

filed by plaintiffs and defendants. Anheuser-Busch intervened as an additional defendant and filed its own motion for summary judgment.

The circuit court ruled on the summary judgment motions in April of 2002. Wexler's challenge to the statute was successful. Although the court rejected Wexler's contention that Public Act 91—38 violated our constitution's uniformity clause (Ill. Const. 1970, art. IX, § 2), it found that the statute violated the three readings rule and the single subject clauses of article IV, section 8(d), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 8(d)).

In a subsequent order, the circuit court granted permanent injunctive relief to plaintiff. It stayed the permanent injunction pending appeal, but ordered the tax owed by Judge and Dolph under the challenged law to be paid into a protest fund until the appeal was resolved. Following resolution of a motion to reconsider, the court made an express written finding under Rule 304(a) (155 Ill. 2d R. 304(a)) that there was no just reason for delaying enforcement or appeal. The matter is now before us for review.

A threshold question on this appeal is whether the circuit court erred in rejecting the state defendants' assertion that Wexler lacked standing to challenge the statute. Under Illinois law, lack of standing is an affirmative defense. A plaintiff need not allege facts establishing that he has standing to proceed. Rather, it is the defendant's burden to plead and prove lack of standing. *Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago*, 189 Ill. 2d 200, 206 (2000). Where a plaintiff has no standing, the proceedings must be dismissed. That is so because lack of standing negates a plaintiff's cause of action. See *Wood River Township v. Wood River Township Hospital*, 331 Ill. App. 3d 599, 604 (2002).

The state defendants challenged Wexler's standing in a motion to dismiss filed pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)). A section 2—619 motion to dismiss presents a question of law. So too does the issue of a plaintiff's standing. Our review is therefore *de novo*. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 411 (2002); see *Kankakee County Board of Review v. Property Tax Appeal Board*, 316 Ill. App. 3d 148, 151 (2000).

The function of the doctrine of standing is to insure that issues are raised only by those parties with a real interest in the outcome of the controversy. To have standing to challenge the constitutionality of a statute, as Wexler sought to do here, one must have sustained or be in immediate danger of sustaining a direct injury as a result of enforcement of the challenged statute. The claimed injury must be (1) distinct and palpable; (2) fairly traceable to defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief. *Chicago Teachers Union, Local 1*, 189 Ill. 2d at 206-07.

In the case before us, Wexler claims standing to challenge the constitutionality of Public Act 91—38 on the theory that he was injured by having to pay the higher tax imposed by the statute when he bought the bottles of vodka at Evanston First Liquors. To the extent that Wexler was actually burdened by the higher tax, however, it was a burden he shouldered willingly. Under Illinois law, a taxpayer can argue that tax payments were involuntary in only two situations: (1) if he or she lacked knowledge of the facts upon which to protest the taxes at the time they were paid or (2) the taxpayer paid the taxes under duress. *Geary v. Dominick's Finer Foods, Inc.*, 129 Ill. 2d 389, 393 (1989). Neither of those circumstances is present here.

In assessing whether a tax was paid under duress, Illinois law does not require a showing that the taxpayer

was actually threatened by anyone. Implied duress will suffice. *Geary*, 129 Ill. 2d at 402-03. Such duress exists where the taxpayer's refusal to pay the tax would result in loss of reasonable access to a good or service considered essential. *Geary*, 129 Ill. 2d at 396-400. Goods or services deemed to be necessities have included telephone and electrical service and, for women, sanitary napkins and tampons. *Geary*, 129 Ill. 2d at 398-99.

Alcoholic beverages do not fall within the category of necessary goods or services. Without commenting on the social utility of beer, wine, and spirits, we note simply that they are not essential, in any objective sense, to consumers such as Wexler. They were certainly not essential to Wexler himself. There is no indication in the pleadings or the record that Wexler had ever purchased Smirnoff vodka before or needed to do so in the future. In fact, there is nothing to suggest that Wexler ever bought or wanted to buy alcoholic beverages of any kind outside of the particular purchases mentioned in his complaint. Under such circumstances, Wexler cannot contend that he paid the tax under duress.

There is likewise no basis for holding that he lacked knowledge of the facts upon which to protest the taxes at the time they were paid. Wexler was clearly aware of the tax increase produced by Public Act 91—38 and its effects on the price of alcoholic beverages. Despite that knowledge, and despite the fact that he had no need for the vodka, Wexler nevertheless went forward with the purchases. Based on that conduct and the course of subsequent events, it seems clear that Wexler actually bought the vodka precisely because of the tax increase. His goal was to establish a legal foundation for challenging the new law, and he hoped the transactions would provide one.

The principal relief sought by Wexler in his complaint is a refund of the additional tax required by Public Act

91—38. Where, as here, a taxpayer has paid a tax voluntarily, he normally may not recover that payment even if the taxing body assessed or imposed the taxes illegally. Voluntary tax payments can only be recovered if such recovery is authorized by statute. *Geary*, 129 Ill. 2d at 393.

Wexler claims the State Officers and Employees Money Disposition Act (30 ILCS 230/1 *et seq.* (West 2000)) provides such authorization in this case. That statute, sometimes known as the Protest Fund Act, allows taxpayers to recovery voluntary tax payments if certain procedures are followed. Under the statute, the taxpayer may contest a collection of a tax by remitting payment to the relevant state entity under protest. The state entity notifies the treasurer that the money has been paid under protest, and the treasurer is then required to place the money so paid into a special fund known as the protest fund. Once that has been done, the taxpayer has 30 days to file a complaint and obtain a temporary restraining order or preliminary injunction to restrain the treasurer from transferring the funds. If the taxpayer succeeds in doing that and, within the same 30-day period, also serves a copy of the temporary restraining order or injunction on the treasurer and the entity to whom the payment under protest was made, the funds will remain in the protest fund until the challenge is resolved. If the challenge is resolved in favor of the taxpayer, the funds will be returned to him. If it is resolved in favor of the state, they will be transferred to whatever governmental fund they would have gone to absent the protest. 30 ILCS 230/2a (West 2000).

Wexler attempted to avail himself of this procedure by presenting letters to the salesclerks at Evanston First Liquors at the time he purchased the vodka. That effort, however, had no legal effect. By its terms, the system for payment under protest created by the State Officers and

Employees Money Disposition Act pertains to situations involving payments made by taxpayers to the taxing authorities. Such a situation is not before us. As noted at the outset of this opinion, the taxes challenged by Wexler are levied on manufacturers and importing distributors of alcoholic beverages. Wexler is neither. He did not make the Smirnoff vodka. He did not import it. He did not distribute it. He merely purchased it at a local liquor store.

As a consumer, Wexler was not responsible for paying or remitting any part of the challenged tax to the state. Correspondingly, the retail establishment where Wexler purchased the vodka was not responsible for collecting the tax from him, nor did it have any responsibility for paying the tax itself. Because the tax was levied only on manufacturers or importing distributors, the entity liable for the tax on the alcohol ultimately bought by Wexler was Judge and Dolph, the importing distributor which sold the Smirnoff vodka to Evanston First Liquors.

Evidence was presented to show that in order to offset the tax burden, Judge and Dolph elected to increase the wholesale price it charged to retailers for the vodka, just as it could have done if faced with other types of additional costs. Although the higher wholesale price put pressure on retailers to charge more to consumers, Judge and Dolph was not required by law to pass the effects of the tax along to retailers. Retailers, in turn, had no statutory obligation to pass on the higher costs they faced to retail customers such as Wexler. Their choice to do so was purely a business decision. Depending on their assessment of factors such as consumer demand and price sensitivity, manufacturers, importing distributors, and retailers were free to proceed differently. Had they considered it prudent, they could have absorbed the tax's effects to keep prices lower in the hope that a lower price would yield higher sales volume,

thereby generating sufficient additional profits to offset their higher tax costs.

That Judge and Dolph elected not to employ such a pricing strategy does not alter the legal status of the parties before us. Consumers such as Wexler cannot be considered the payers of the challenged tax for the purposes of the State Officers and Employees Money Disposition Act. The same is true of First Evanston Liquor, the retailer which sold Wexler the vodka. In the litigation before us, the only entity that qualifies as a payer of the challenged tax attributable to the vodka Wexler bought is Judge and Dolph, the importing distributor. It was the only entity under a legal obligation to remit the tax to the state, and it was the only entity that actually paid the tax. As a result, it was the only entity entitled to invoke the protest fund procedures under the State Officers and Employees Money Disposition Act. It did not do so and has made clear that it has no desire to do so.

In addition to this basic impediment to Wexler's attempted protest under the State Officers and Employees Money Disposition Act, the manner in which he proceeded failed to comply with the statute's requirements. The Act requires that a notice of payment under protest be directed to "every officer, board, commission, commissioner, department, institute, arm or agency" authorized to receive the payment on behalf of the state. 30 ILCS 230/2a.1 (West 2000). That was not done here. Wexler's notices were addressed generally "to whom it may concern" and given to salesclerks at the liquor store.

The Act further requires the notice to state what portion of the remittance is being made under protest where the amount remitted exceeds the amount being paid under protest. A specific dollar amount must be given. Wexler's notices did not do that. The amount Wexler paid included the retail price of the vodka, plus vari-

ous taxes, including local, county and state taxes. Wexler, however, did not identify the particular amount of the remittance he was making under protest. His notices merely stated that he was protesting that part of the purchase price "representing the State of Illinois' Alcoholic Beverage Tax, including the increase in that tax made by P.A. 91—38."

The Act also requires that the notice of protest include the name and address of the person making the payment under protest. 30 ILCS 230/2a.1 (West 2000). Again, that was not done. Although Wexler ultimately made several vodka purchases, the purchase on which he predicated his original complaint was accompanied by a notice that bore only his name. It did not give his address or any address.

Wexler's failure to comply with the statutory notice requirements is no mere technicality. Under the express provisions of section 2a of the State Officers and Employees Money Disposition Act (30 ILCS 230/2a (West 2000)), one will not be considered to have made a payment under protest within the meaning of the law unless the payment is made to the pertinent governmental official or entity under protest in the form specified by the Act. As we have discussed, Wexler met none of those conditions. He remitted nothing to any governmental official or individual, what he remitted to the liquor store did not include an amount for the challenged tax, and his notice of protest did not comply with section 2a.1's requirements. Wexler therefore cannot be said to have made payment under protest. Without that, the legal predicate for his cause of action is gone.

Wexler's failure to comply with the statute is something we cannot overlook. When a statute provides a procedure to be used for the recovery of taxes, the taxpayer must comply with the statutory provisions to enable a court to order a refund. Statutory compliance is

a prerequisite to a taxpayer's right to defend against a particular tax levy and the burden of showing this compliance rests on the objecting taxpayer. That includes compliance with the notice provisions governing tax protest funds. See *Yellow Freight System, Inc. v. Illinois Commerce Comm'n*, 70 Ill. App. 3d 95, 97-99 (1979).

Wexler realized this flaw in his case after filing suit. He attempted to cure the defect by seeking an injunction to compel the actual taxpayer, Judge and Dolph, to begin making payments of the tax under protest in conformity with the State Officers and Employees Money Disposition Act. An injunction was necessary because Judge and Dolph itself harbored no objections to the changes in the tax law made by Public Act 91—38. It was perfectly willing to comply with the new law. For it, the expense and difficulty associated with payment of taxes under protest were unwarranted.

Over Judge and Dolph's strenuous protests, the circuit court adopted Wexler's approach and granted the injunction he requested. Since that injunction issued, Judge and Dolph has been required, against its wishes and at its own expense, to protest the tax in accordance with the statutory protest fund procedures. In effect, Judge and Dolph is being forced to serve as an involuntary surrogate for Wexler and the class he purports to represent.

The result is a peculiar one. Judge and Dolph, which pays the tax, does not wish to challenge it. Wexler, who seeks to challenge the tax, has never paid it. As for Evanston First Liquors, the retailer from whom Wexler bought the vodka, it neither paid the tax, nor challenged it.

We find nothing in reason or the law that would justify extending the tax protest procedures mandated by the State Officers and Employees Money Disposition Act to such a situation. Wexler attempts to justify his position by invoking our decision in *Crane Construction Co.*

*v. Symons Clamp & Manufacturing Co.*, 25 Ill. 2d 521 (1962). That opinion does not support his position.

*Crane* involved a challenge to certain amendments to the Retailers' Occupation and Use Tax Act which extended those taxes to leases. The challenge was brought by a construction company that leased equipment for use in its business. Under the amended law, it was required to pay use tax to the lessor of the equipment. The lessor, in turn, would pay those funds to the state in the form of retailers' occupation tax. Because the construction company did not actually remit any of the tax money to the state directly, it sought and obtained an injunction requiring the lessor to remit payment under protest in accordance with the statutory provisions governing tax protest funds until its challenge to the statutory amendments was resolved.

On appeal, the State argued that the company should not be permitted to contest the retailers' occupation tax because that tax was levied upon the lessor of the equipment, not the construction company. We held that the State's argument would be well taken if only the retailers' occupation tax were involved. We noted, however, that the construction company was also challenging the use tax, which it clearly had the right to do. Under the law, the use tax paid by the construction company was directly linked to the retailers' tax paid by the lessor of the equipment. Because of the complementary and interlocking nature of the two taxes, we held that "[t]o the extent to which the validity of the use tax and its application to [the construction company] is dependent upon the validity of the retailers' occupation tax, [the construction company] may also challenge that tax." *Crane*, 25 Ill. 2d at 528.

What distinguishes *Crane* from the case before us is that, here, there are no interlocking taxes. The various state and local sales taxes Wexler paid when he purchased

the vodka at Evanston First Liquors had no connection whatever with the tax on manufacturers and importing distributors of alcoholic beverages he sought to challenge. Accordingly, whether the tax on manufacturers and importing distributors of alcoholic beverages was valid or not, the taxes Wexler himself was required to pay when he purchased vodka would be unaffected.

The distinction is pivotal because it goes to basic principles underlying the rules of standing. As we discussed earlier in this opinion, a prerequisite of standing is that the plaintiff must face some injury substantially likely to be prevented or redressed by the grant of the relief he requests. That requirement was plainly met in *Crane*. It plainly cannot be met here.

A successful challenge to the law in *Crane* would have necessitated a refund of the retailers' occupation tax to the leasing company. That, in turn, would have resulted in a refund of the use tax by the leasing company to the construction company that brought the suit. No such interrelationship exists here. Even if the tax on manufacturers and importing distributors of alcoholic beverages were unconstitutional and had to be refunded, the refunds would go to the manufacturers and importing distributors who paid it, not to retail customers, who did not. The manufacturers and importing distributors would have no obligation to pass any part of the tax savings on to retailers, and retailers, in turn, would have no obligation to make any refunds to or lower any prices for customers such as Wexler. Any benefits to Wexler and the class he represents are therefore entirely speculative.

Wexler's challenge to the tax on manufacturers and importing distributors of alcohol is analogous to the situation we hypothesized in *Crane* of the construction company challenging only the retailers' occupation tax. Indeed, it is as if the construction company were challenging the retailers' occupation tax and there were no

use tax. Had those circumstances been present in *Crane*, we would have concluded that the construction company lacked standing. Because comparable circumstances exist here, we hold that Wexler has no standing in this case. Defendants' motion to dismiss for lack of standing should have been granted.

For the foregoing reasons, the judgment of the circuit court is reversed and the cause is remanded with directions that the cause be dismissed.

*Reversed and remanded with directions.*

JUSTICE FREEMAN took no part in the consideration or decision of this case.