2020 IL App (2d) 191096-U
No. 2-19-1096
Order filed November 5, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MARMORA REAL ESTATE, LLC, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17-L-347 |
| | ) | |
| HOUSE TOPPERS EXTERIORS, | ) | |
| DAVID P. PUCHALSKI, and MAC | ) | |
| CONSTRUCTION AND ROOFING, | ) | |
| INC. | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (House Toppers Exteriors, and David | ) | Robert G. Kleeman |
| Puchalski, Defendants-Appellants) | ) | Judge, Presiding |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1     *Held*:     The trial court's finding House Toppers Exteriors, Inc. liable for breach of contract and awarding $20,000 in actual damages to plaintiff was against the manifest weight of the evidence. The trial court's award of $20,000 in compensatory damages pursuant to the Illinois Consumer Fraud and Deceptive Practices Act was against the manifest weight of the evidence. The trial court erred as a matter of law in awarding plaintiff $100,000 in punitive damages under the Illinois Consumer Fraud and Deceptive Practices Act. The award of attorney's fees to plaintiff must be reversed as it was not the prevailing party on its claim of defendants' violation of the Illinois Consumer Fraud and Deceptive Practices Act.

¶ 2    Defendants, House Toppers Exteriors, Inc. ("House Toppers") and David Puchalski ("David") (collectively "defendants"), appeal from the trial court's June 11, 2019, order finding (1) House Toppers liable on Count II of Plaintiff's, Marmora Real Estate, LLC (Marmora), verified complaint for breach of contract; and (2) House Toppers and David liable on Count III for violation of the Illinois Consumer Fraud and Deceptive Practices Act (Fraud Act) (815 ILCS 505/1 *et seq* (West 2018)), awarding compensatory and punitive damages to Marmora. Additionally, defendants appeal from the trial court's August 6, 2019, order awarding Marmora attorney's fees as a prevailing party under the Fraud Act.

¶ 3                                I. BACKGROUND

¶ 4    On March 24, 2017, Marmora filed a three-count verified complaint against defendants and Mac Construction and Roofing, Inc. (Mac).[1] Count II alleged breach of contract against defendants. Count III alleged violations of the Fraud Act against defendants and Mac. On June 18, 2018, defendants answered Marmora's complaint, generally denying all allegations therein. A bench trial was held May 15, 17, and 21, 2019. The following evidence was adduced at trial. We only recite those facts and evidence relevant to our resolution of the issues raised in this appeal.

¶ 5    Dr. Maryann Tadros (Tadros) and her husband, Adib William Ishak Abdelalak (Adib), purchased a two-story commercial office building in Carol Stream in October 2012 at a foreclosure sale for $220,000. According to Tadros, title to the building was transferred to Marmora at some point thereafter; however the record is devoid of such evidence. Tadros is a chiropractic physician

---

[1] The trial court found Marmora to have abandoned Count I of the verified complaint alleging negligence against defendants and Mac. The fact recitation here will only concern Counts II and III of the complaint. Mac is not a party to this appeal.

and president of Elk Trail Chiropractic Clinic, Inc. (Elk Trail). Adib is the manager and sole member of Marmora. Adib speaks a dialect of Arabic, so Tadros translates all information regarding business with Marmora for him. Prior to Tadros and Adib's purchase of the building, a portion of the northwest corner of the roof and a piece of plywood securing the roof had blown away during a storm; a fact known to the couple when purchasing the building.

¶ 6    Tadros received multiple bids for roofing repairs to the building, one of which came from David. David is the sole shareholder and sole employee of House Toppers. In April 2013, David met with Tadros and examined the roof which he described as being "pretty beat up." David testified that "the northwest corner was completely flipped over, had exposed decking[,] *** there [were] some other holes throughout the building." He submitted an original bid to Tadros in April 2013 for replacing the Tectum decking on the entire roof for $80,990.00. Tadros and Adib rejected that bid.

¶ 7    Tadros contacted David shortly thereafter and David returned to the building. After inspecting the building a second time, David submitted another proposal for the repair. That proposal included installation of 1,700 sq. ft. of Tectum decking at a price of $49,240.00.

¶ 8    Sometime in May 2013, David met with Tadros, Adib, and Leszek Dobek. Dobek is vice president, secretary, and owner of Mac. David told Tadros and Adib that he planned to use Mac as his subcontractor and wanted to introduce the couple to Dobek. Dobek testified that he discussed the replacement of the Tectum decking with Tadros and Adib. Dobek told them that at least 1,700 sq. ft. of Tectum decking would need to be replaced, but also discussed concerns that all the Tectum decking may need to be replaced due to damage from saturation. Dobek also recalled answering additional questions raised by the couple during the course of their meeting. Tadros and

Adib testified that they did not speak with Dobek at any point during this meeting and did not ask David who Dobek was because they thought he was just a friend.

¶ 9    David held a limited roofing license which only allowed for work on residential homes, a fact he admittedly did not disclose to Tadros and Adib. Mac possessed an unlimited roofing contractor license, allowing it to perform work on commercial buildings. In his 19 years of roofing experience, David testified that it was common for roofers with a limited license to work with a roofer possessing an unlimited commercial roofing license to secure permits for roofing jobs. Steve Martin, the development officer for the Village of Carol Stream, testified that while a commercial roofing permit would be required to perform work on the building, a contractor with a limited roofing license may work with an unlimited roofing license holder "as long as the unlimited roofing license contractor is listed on the permit as doing the work."

¶ 10    At Tadros's and Adib's request, David sent them a contract reflecting his intent to replace 1,700 sq. ft. of Tectum Decking. The contract stated that "[a]ll roofing work will be done in accordance with GAF specifications." The contract further noted the "DIAMOND PLEDGE WARRANTY" which included 15-year GAF warranty. Mac was certified as a master installer and able to offer a GAF diamond pledge warranty on work it performed as a subcontractor. The price for the work was $49,240.00.

¶ 11    Following Tadros's translation, David and Adib signed the contract on May 20, 2013. A $20,000 down payment was paid to House Toppers from Elk Trail's BMO Harris Bank, NA checking account.

¶ 12    On June 17, 2013, Mac's employees began work on the roof. Later that morning, one of Mac's employees contacted David to inform him that the entire Tectum decking needed to be replaced. David called Tadros and relayed this information, further telling her that he would need

to go back to his original $80,990.00 offer to replace the entire roof. Tadros and Adib met with David at the building and Tadros ordered all work to cease. Mac's employees covered the roof and remaining equipment with blue tarps after removing any objects that may have been blown off by wind. The following day, Adib met David at the building with Mac's employees on the roof under the belief that work would resume. David reiterated to Adib that he would need to agree to the original price of replacing the entire roof. Adib refused because he believed David "was a liar and he didn't have a license." David ordered Mac's employees off the roof.

¶ 13   Later on June 18, 2013, Tadros and Adib met again with David at the building. A building inspector from the Village of Carol Stream showed up at the site and told David that he needed a permit to resume work. David told the inspector that he would "be there later to get the permit." Dobek testified that Mac had left a dumpster and roofing materials on the property but could not retrieve them because he was not allowed back on the property. The dumpster and roofing materials had been purchased with the $20,000 down payment paid to David by Elk Trail. Dobek estimated the value of those items to be $19,000.

¶ 14   David sent Tadros another proposal on June 19, 2013, reflecting the replacement of all Tectum decking for $80,990.00. After an exchange of emails, an agreement could not be reached. David told Tadros that the roof needed to be secured as upcoming inclement weather could further damage the property.

¶ 15   Later in June 2013, Adib met with Paul Adams, owner of Adam's Complete Home Remodeling. Adams, who speaks fluent Arabic, offered to help Adib find a new roofer. Adams inspected the building where he observed the blue tarps and materials left on the roof by Mac. He described the roof and interior of the building as in "bad shape." The interior had water on the floors and mold on the first floor. He testified that Adib stated that the "whole roof needed to be

replaced." After some discussions with Tadros and Adib about specific work to be done, Adams met with Adib again on October 22, 2013, and discussed remodeling the entire building.

¶ 16    Adams entered into an agreement with Tadros in which he would do work on the interior of the building and procure a subcontractor to repair the roof. Adams was provided a check for $2000 from the same Elk Trail account as the down payment provided to David. Adams then entered into a contract with Johnny Soto, partner of One Construction & Roofing, as subcontractor to demolish the entire Tectum decking an roof of the building. Soto was to obtain and pay for all permits and replace the entire roof deck with metal decking.

¶ 17    Marmora introduced a variety of exhibits to reflect the costs of the work. Exhibit 6 contained the scope of work to be performed by Johnny Soto, payments made to Johnny Soto, and invoices that Tadros testified were paid for material and supplies ordered by Johnny Soto. The invoices reflect credit card invoices paid by Tadros and checks drawn from the Elk Trail checking account.

¶ 18    Exhibit 7 contained 34 checks drawn on the Elk Trail checking account; 33 were made payable to cash for Adib's payments to various laborers. The remaining check in Exhibit 7 was for "seal coating parking lot" in the amount of $1600.

¶ 19    Exhibit 8 contained receipts for purchases of materials. The purchases were made by Tadros with a credit card. Exhibit 9 contained invoices for decorative wall panels. Exhibit 10 contained invoices for dumpsters related to work on the building's interior. Exhibit 11 contained receipts for tile. Exhibit 12 contained receipts for paint. Exhibit 13 contained random receipts from purchases Tadros made at Lowe's. Exhibit 14 contained receipts from Habitat for Humanity. Exhibit 15 contained receipts from Home Depot for a variety of purchases. Exhibit 16 contained receipts from purchases at Menard's. Many of the receipts contained within the various exhibits

reflect payments for things wholly unrelated to the building or its repairs. Tadros acknowledged in her testimony that these were included in error.

¶ 20    On June 11, 2019, the trial court issued its memorandum order finding House Toppers liable on Count II of the complaint for breach of contract, and defendants liable on Count III for violation of the Fraud Act. As to House Toppers liability for breach of contract, the trial court noted that Marmora "has entered into evidence Exhibit 3, a check for $20,000 that was paid pursuant to the contract." The court went on to find that damages related to Exhibits 6-16 were "too speculative and are not awarded." The trial court awarded Marmora $20,000 for House Toppers's breach of contract. In finding defendants liable on Count III for violation of the Fraud Act, the trial court found that defendants' failure to disclose a lack of the proper license to perform the roofing work amounted to "a deceptive act or practice." The trial court awarded Marmora $20,000 and stated "[a]s to the issue of damages, the analysis to the breach of contract claim applies to the consumer fraud claim with equal force." The trial court further awarded $100,000 in punitive damages to Marmora pursuant to the Fraud Act as "the conduct of defendants showed a reckless disregard of others' rights." We will examine the trial court's order in greater detail in our analysis of the issues raised by defendants in this appeal below.

¶ 21    On June 24, 2019, defendants filed a motion under section 2-1203 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1203 (West 2018)) to vacate the June 11, 2019, order. On August 6, 2019, the trial court awarded Marmora attorney's fees as a prevailing party under the Fraud Act, plus costs. On August 30, 2019, defendants and Mac filed an amended section 2-1203 motion to vacate the June 11, 2019, order and the August 6, 2019, order granting attorney's fees.

¶ 22    On December 10, 2019, the trial court denied defendants motion to vacate. Defendants then filed this timely appeal.

¶ 23                                    II. ANALYSIS

¶ 24    Before addressing the contentions raised by defendants, we find it necessary to address Marmora's standing to bring the underlying lawsuit based on the record provided. Our review of the record in this case reveals that, aside from Tadros's testimony that the building was transferred to Marmora at some point after its purchase by her and Adib, Marmora's interest in the underlying suit is nearly nonexistent. The function of the doctrine of standing is to ensure that issues are raised only by those parties with a real interest in the outcome of the controversy. Standing requires some injury in fact to a legally cognizable interest. *Muirhead Hui L.L.C. v. Forest Preserve District of Kane County*, 2018 IL App (2d) 179835, ¶ 22. The claimed injury must be (1) distinct and palpable; (2) fairly traceable to defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004).

¶ 25    Under Illinois law, lack of standing is an affirmative defense. A plaintiff need not allege facts establishing that he has standing to proceed. Rather, it is the defendant's burden to plead and prove lack of standing. *Wexler*, 211 Ill. 2d at 22. Where a plaintiff has no standing, the proceedings must be dismissed. That is so because lack of standing negates a plaintiff"s cause of action. *Id*. Here, the record demonstrates that Marmora lacked standing to initiate the underlying suit as Marmora suffered no injury. However, defendants never plead or proved Marmora's lack of standing in the trial court. As such, we will not hold that Marmora was precluded from bringing the underlying suit, but find one of defendants' arguments regarding the trial court's findings on their alleged breach of contract compelling under similar reasoning.

¶ 26    In this appeal, defendants contend that (1) the trial court erred in finding House Toppers liable for breach of contract; (2) the conduct alleged in Count III of Marmora's verified complaint did not implicate the Fraud Act; (3) even if the Fraud Act was implicated, the trial court erred in

finding that the deceptive act or omission was the proximate cause of actual damages to Marmora; (4) the trial court erred as a matter of law in awarding Marmora punitive damages under the Fraud Act; and (5) the trial court's award of attorney's fees to Marmora was an abuse of discretion. We address defendants' contentions in turn.

¶ 27     Within the arguments raised by defendants in contending the trial court erred in finding House Toppers liable for breach of contract, we find one argument dispositive to this issue on appeal: Marmora is not entitled to any damages for breach of contract because it failed to prove that it incurred any damages from defendants' alleged breach.

¶ 28     In challenging an order from the trial court on a breach of contract claim, the standard of review is whether the trial court's judgment is against the manifest weight of the evidence. *Judgment Services Corp. v. Sullivan,* 321 Ill. App. 3d 151, 154 (2001). A judgment is against the manifest weight of the evidence when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence. *Dargis v. Paradise Park, Inc.*, 354 Ill. App. 3d 171, 177 (2004). The elements of a cause of action for breach of contract include the existence of a valid and enforceable contract, the plaintiff's performance, a breach of the contract by the defendant, and resultant damages to the plaintiff. *Razor Capital v. Antaal*, 2012 IL App (2d) 110904, ¶ 30. In proving damages, the burden of proof is on the plaintiff to establish a reasonable basis for computing damages. *Razor v. Hyundai Motor Amercia*, 222 Ill. 2d 75, 107 (2006).

¶ 29     In Marmora's verified complaint, it alleged in paragraph 22 of Count II that "[Marmora] gave Defendants $20,000 as down payment on the contract price of $49,240." Defendants' answer to the complaint responded to this allegation with "Deny." Defendants argue that Marmora failed to prove at trial that it was injured by the alleged breach of contract because the $20,000 down payment awarded as damages in the trial court's order, was not incurred by Marmora.

¶ 30    Before further analyzing defendants' argument, we must address Marmora's assertion that defendants failed to raise this issue in either the trial court or in its 2-1203 motion to vacate, and thus waived the argument on appeal. Although not articulated in as many words at trial, defendants did deny the allegation that Marmora paid $20,000 as a down payment on the contract price. Because resultant damages to the *plaintiff* is an essential element of maintaining a breach of contract action (*Razor Capital*, 2012 IL App (2d) 110904, ¶ 30), and the record before us demonstrates that Marmora suffered no damages (see infra ¶ 33.), we decline to waive defendants' argument on appeal. See *Advance Iron Works, Inc. v. ECD Lincolnshire Theater, LLC.*, 339 Ill. App. 3d 882, 886 (2003) (courts may ignore waiver on appeal to obtain a just result and maintain a sound body of precedent).

¶ 31    In an action for damages for breach of contract, the party seeking to recover must establish not only that those damages were sustained but must also supply a reasonable basis for computation of those damages. *Brewer v. Custom Builders Corp.*, 42 Ill. App. 3d 668, 678 (1976). A court may award an injured party its expenditures in partly performing its own obligations under the contract as an alternative measure of damages when damages are otherwise too speculative. *Herbert W. Jaeger & Associates v. Slovak American Charitable Association*, 156 Ill. App. 3d 106, 112-113. Damages must be proved with a reasonable certainty and cannot be based on conjecture or speculation. *Razor*, 222 Ill. 2d at 107.

¶ 32    Here, we agree with the trial court's findings regarding plaintiff's Exhibits 6-16. The trial court found that damages based on the documents contained with Exhibit 6 "would not put the plaintiff in its original position." Exhibit 7 was classified as "too speculative to form a reasonable basis to establish damages." Exhibits 8-16, which contained many receipts unrelated to the property, was found to be "too speculative and *** not awarded." The record on appeal fully

supports the trial courts findings on those exhibits. However, based on the June 11, 2019, order, the only reasonable basis for the trial court's award of $20,000 to Marmora was "Exhibit 3, a check for $20,000 that was paid pursuant to the contract." This is where we find error with the court's order based on the evidence introduced at trial.

¶ 33 Exhibit 3 is a check from Elk Trail Chiropractic Clinic, Inc.'s BMO Harris Bank account, made payable to House Toppers Exteriors, Inc. Elk Trail Clinic is not a party to the contract at issue, nor is it a party to the subject litigation. Adib, the sole member of Marmora, testified at trial that he had recently received a mortgage loan secured by the building in the amount of $895,000, but no evidence was introduced to suggest that Marmora has reimbursed Elk Trail Clinic, or if it has any obligation to reimburse it. The record is devoid of any evidence to support awarding Marmora its expenditures in partly performing its *own obligations* under the contract as an alternative measure of damages with the presence of the established speculative damages alleged here. See *Jaeger*, 156 Ill. App. 3d 106, 112-113. Further, while Adib's signature appears on the contract, Marmora is not mentioned at all. As Marmora failed to prove any actual contract damages, judgment on the breach of contract claim must be entered in favor of defendant. See *Kopley Group V., L.P., v. Sheridan Edgewater Properties, LTD.*, 376 Ill. App. 3d 1006, 1014 (2007). Therefore, the trial court's finding of House Toppers's liability for breach of contract and award of $20,000 in damages to Marmora was not based on the evidence presented at trial and before us in this appeal.

¶ 34 Defendants next contend that the conduct alleged in Count III of Marmora's verified complaint did not implicate the Fraud Act. However, we decline to reach this contention as defendants' remaining contentions are dispositive of this appeal. Even assuming the Fraud Act's implication to the facts of this case, the trial court's finding that defendants' deceptive act or

omission was the proximate cause of actual damages was in error.

¶ 35   In its June 11, 2019, order, the trial court based the damages awarded to Marmora for defendants' violation of the Fraud Act, in part, on the following:

> "[Marmora] asserts that [defendants] contracted to perform commercial roofing and those defendants did not possess the proper license. Defendants failed to disclose that fact. That is a deceptive act or practice. ***.
>
> As to the issue of damages, the analysis applied to the breach of contract claim applies to the consumer fraud claim with equal force. [Marmora] has demonstrated that it is entitled to $20,000 in damages. ***."

As discussed above, the analysis applied by the trial court to the breach of contract claim was against the manifest weight of the evidence. The $20,000 down payment was not paid by Marmora and, thus, Marmora failed to prove any actual contract damages. The trial court's award of $20,000 to Marmora on its claim under the Fraud Act is based on the same erroneous reasoning and must be reversed. Further, the trial court awarded $100,000 in punitive damages to Marmora pursuant to the Fraud Act, which leads us to defendants' next contention.

¶ 36   Defendants contend that the trial court erred in awarding excessive punitive damages to Marmora pursuant to violation to the Fraud Act. Defendants argue that the conduct alleged in this case does not arise to the type of conduct contemplated by Illinois law to allow for the award of punitive damages.

¶ 37   Section 10a of the Fraud Act provides

> "(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems

proper." 815 ILCS 505/10a(a) (West 2018).

Courts should award punitive damages in Consumer Fraud Act cases only for conduct that is outrageous, either because the defendant's motive was evil or the acts showed a reckless disregard of others' rights. *Totz v. Continental Du Page Acura,* 236 Ill. App. 3d 891, 909 (1992). The purpose of awarding punitive damages is to punish the wrongdoer and, in doing so, to deter that party and others from committing similar wrongful acts. *Totz,* 236 Ill. App. 3d at 909. Punitive damages are not favored in the law; thus, courts should be careful never to award such damages improperly or unwisely. *Kleidon v. Rizza Chevrolet, Inc.,* 173 Ill. App. 3d 116, 121. "In reviewing a decision on punitive damages, an appellate court must not disturb the trial courts decision unless the trial court abused its discretion." *Kleczek v. Jorgensen,* 328 Ill.App.3d 1012, 1024–25 (2002). A trial court abuses its discretion only if no reasonable person could agree with the position of the trial court. *Matthews v. Avalon Petroleum Co.,* 375 Ill. App. 3d 1, 9 (2007).

¶ 38    The rule in Illinois is that punitive damages may not be awarded in the absence of compensatory damages. *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 137 Ill. App. 3d 84, 91 (1985). Punitive damages "are in addition to compensatory damages and cannot be allowed unless actual damage is shown." *Hayman v. Autohaus on Edens, Inc.*, 315 Ill. App. 3d 1075, 1078; quoting *In re Application of Busse,* 124 Ill. App. 3d 433, 438 (1984); *Florsheim v. Travelers Indemnity Co. of Illinois,* 75 Ill. App. 3d 298, 310 (1979)( " * * *the plaintiff can only be awarded punitive damages where actual damage is shown.")

¶ 39    Here, in awarding Marmora $100,000 in punitive damages for defendants' violation of the Fraud Act, the trial court found defendants' deceptive act to be

> "[A] reckless disregard of others' rights. Defendants intentionally misrepresented their qualifications to perform under the contract. Defendants entered into an undisclosed

oral subcontract agreement to attempt to complete the job, failed to secure the necessary permits, misrepresented their ability to secure a warranty on their work, contracted for inadequate insulation. Defendants placed [Marmora] in a vulnerable position by leaving [its] roof exposed and then exploited that vulnerability by demanding more money. All those acts contributed to damage to [Marmora's] building. Punitive damages are appropriate in this case."

We do not agree that the facts presented in this case support the trial court's finding that defendants' conduct rose to level of "a reckless disregard" of Marmora's rights. While its true that David failed to disclose his lack of an unlimited roofing license, his subcontractor, MAC, possessed such a license. David's testimony revealed that he would have used MAC's license to secure the necessary permit if required. Dobek testified that MAC was a GAF certified master installer and authorized to provide the GAF diamond pledge warranty on work performed as a subcontractor. Further, the evidence adduced at trial showed that David told Adib and Tadros that rain was predicted in the ensuing days after being ordered to stop work and covering the roof with blue tarps. David testified that he did this to secure a new contract for Tectum decking of the entire roof as the replacement contemplated in the original contract would have resulted in a defective repair in need of replacement. Indeed, Marmora hired a new contractor to replace the entire roof with galvanized metal decking almost immediately after defendants were forced off the property.

¶ 40    However, aside from our arrival at a different conclusion from the trial court as to the motive and effect of defendants' alleged deceptive act, Marmora did not prove that it suffered from any actual damages to sustain an award for punitive damages under the Fraud Act. In the absence of proof of either compensatory or actual damages, the trial court's award of $100,000 in punitive damages to Marmora under Count III of the complaint for defendants' violation of the Fraud Act

was in error and necessitates reversal. See *Hayman*, 315 Ill. App. 3d 1075, 1078.

¶ 41 Defendants' final contention in this appeal is that the trial court's award of attorney's fees to Marmora was an abuse of discretion. The arguments raised by defendants regarding this issue are of no event at this point in our analysis as the trial court's June 11, 2019, order granting attorney's fees to Marmora was made "[p]ursuant to the Consumer Fraud Act." Based on our holding in this case, that order must be reversed.

¶ 42 The Fraud Act provides that "in any action brought by a person under this Section, the court *** may award *** reasonable attorney's fees and costs to the prevailing party." 815 ILCS 505/10a(c) (West 2018). As articulated through the foregoing analysis, our holding in this appeal as to the trial court's erroneous findings of actual and punitive damages based on Count III of Marmora's complaint, Marmora did not prevail on its claim of defendant's alleged violation of the Fraud Act. Therefore, the trial court's award of attorney's fees to Marmora must also be reversed.

¶ 43                             III. CONCLUSION

¶ 44 For the foregoing reasons, we reverse the judgment of the Circuit Court of Du Page County.

¶ 45 Reversed.