2021 IL App (1st) 210238

No. 1-21-0238

Fourth Division
March 25, 2021

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| ANNA SCREMENTI, LARRY COOL JR., and MARY PATRICIA NOONAN, | ) ) ) | Appeal from the Circuit Court of Cook County. |
|     Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 2021 COEL 20 |
| | ) | The Honorable |
| LORI WILCOX, as Candidate, Bloom Township | ) | Alfred Paul, |
| Democratic Committeewoman, and Chair of the Bloom | ) | Judge Presiding. |
| Township Democratic Central Committee and Caucus; | ) | |
| KELLEY NICHOLS, Candidate; LARECIA TUCKER, | ) | |
| Candidate; FRANCISCO "FRANK" PEREZ, Candidate; | ) | |
| LESHAWN RIDLEY, Candidate; LEONARD MORGAN, | ) | |
| Candidate; RICARDO LEON JR., Candidate; ROBERT | ) | |
| BENEVIDES, Candidate; BLOOM TOWNSHIP | ) | |
| DEMOCRATIC CENTRAL COMMITTEE; THE | ) | |
| TOWNSHIP OFFICERS ELECTORAL BOARD FOR | ) | |
| BLOOM TOWNSHIP, and its Public Members, JAMES | ) | |
| RHODES, Chairman, CHRISTOPHER COHEN, Member, | ) | |
| and JEFFREY GREENSPAN, Member; CARLA | ) | |
| MATTHEWS, in Her Official Capacity as the Bloom | ) | |
| Township Clerk; KAREN YARBROUGH, in Her Official | ) | |
| Capacity as the Cook County Clerk; and KWAME | ) | |
| RAOUL, in His Official Capacity as the Illinois Attorney | ) | |
| General, | ) | |
| | ) | |
|     Defendants-Appellees. | ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Ellis and Martin concurred in the judgment and opinion.

**OPINION**

¶ 1        On December 1, 2020, the Bloom Township Democratic Central Committee (committee) held a caucus meeting to determine the Democratic nominees for the upcoming April 6, 2021, general election pursuant to section 45-10(a) of the Township Code. 60 ILCS 1/45-10(a) (West 2018). Prior to the beginning of the caucus meeting, the proposed rules governing the caucus meeting were distributed, which included a proposed "full slate" rule, which provided that any person submitting candidates for nomination must present candidates for every open office. The proposed rules were accepted by the electors participating in the caucus meeting, and a motion to amend the rules to remove the "full slate" requirement failed to garner sufficient votes. During the caucus meeting, the defendant candidates were nominated, but other proposed individual nominees were rejected because they did not present a full slate of candidates. After a vote of the entire caucus membership present, the defendant candidates were selected as the Democratic nominees for the general election.

¶ 2        Plaintiffs filed objections with the Township Officers Electoral Board of Bloom Township (electoral board), claiming, *inter alia*, that the "full slate" rule permitted by section 45-50(b)(6) of the Township Code (60 ILCS 1/45-50(b)(6) (West 2018)) was unconstitutional. After a hearing, the electoral board overruled the objections. Plaintiffs then filed a petition for judicial review in the circuit court of Cook County, which affirmed the board and further found that section 45-50(b)(6) is constitutional. Plaintiffs now appeal to this court and, for the reasons that follow, we affirm.

¶ 3                                              BACKGROUND

¶ 4        Bloom Township (Township) is an Illinois township, as defined by the Township Code (60 ILCS 1/1-1 *et seq.* (West 2018)). Under the Township Code, certain township offices are elected "at the time of the regular township election provided in the general election law" and

hold office for four years. 60 ILCS 1/50-10(a) (West 2018). For 2021, the date of the next election is April 6, 2021. See 10 ILCS 5/2A-1.1 (West 2018) (setting forth election schedule). The Township has eight offices that will be voted on in the April 6 election: supervisor, assessor, clerk, highway commissioner, and four trustees.

¶ 5        The nominees for each political party are selected either through a caucus meeting or through a primary. 60 ILCS 1/45-10(a); 45-55 (West 2018). A political party's township central committee decides which process to use. 60 ILCS 1/45-55 (West 2018). In the case at bar, defendant Lori Wilcox, as the Township's Democratic committeewoman and chair of the Democratic central committee, decided to hold a caucus meeting after this court previously determined that a caucus meeting could be held if it was done safely and in compliance with the public health guidelines in place at the time. See *Somer v. Bloom Township Democratic Organization*, 2020 IL App (1st) 201182. The caucus meeting was held on December 1, 2020, and was largely conducted remotely through Zoom.[1] At the caucus meeting, defendants Wilcox, Kelley Nichols, Larecia Tucker, Francisco "Frank" Perez, Leshawn Ridley, Leonard Morgan, Ricardo Leon Jr., and Robert Benevides (collectively, the candidates) were selected as the Democratic nominees for the April 6 election.

¶ 6        After the caucus meeting, plaintiffs filed objections with the electoral board, raising a number of issues. As relevant to the instant appeal, plaintiffs challenged the requirement that any individual seeking the Democratic nomination must present a full slate of candidates for each open office. Plaintiffs claimed that, at the beginning of the caucus meeting, the electors voted on the proposed rules for the caucus election process. One such rule provided that

---

[1] While plaintiffs made arguments as to the adequacy of the process by which the caucus meeting was conducted before the electoral board, they do not raise these issues before this court, so we have no need to discuss them.

candidates could only be submitted as a full slate, and that candidates were required to express their interest in writing by 6:15 p.m. on the day of the caucus meeting.[2] A motion to amend the rules to strike the "full slate" requirement was made, but failed to garner sufficient support to pass. According to plaintiffs, after the rules were accepted, Wilcox announced the nominations of her slate of candidates. Another elector, David Gonzalez, attempted to nominate different candidates, but the nominations were rejected because the nominations did not include candidates for each open office. Plaintiffs claimed that the refusal to consider the Gonzalez candidates violated the first amendment, as they were prevented from voting for any slate of candidates other than those nominated by Wilcox.

¶ 7       In response, the candidates filed a motion to strike the constitutional issues raised in plaintiffs' objections, claiming that the electoral board did not have the authority to decide constitutional issues. The candidates additionally claimed that a "full slate" requirement was permissible under Illinois law.

¶ 8       The parties came before the electoral board for a virtual hearing on February 2 and 3, 2021. After the parties had presented their cases, the members of the electoral board asked questions and discussed the issues with the parties. One issue raised by the electoral board was the question of whether people presented slates of candidates to be voted on or presented individual candidates to fill a slate.[3] Reviewing the video of the caucus meeting, the electoral board noted that it sounded like three different individuals presented the names of the

_____

[2] The 6:15 rule was never enforced, and is not at issue on appeal.

[3] In other words, the electoral board identified two ways of filling a "slate." One option would be voting on "Slate A" versus "Slate B," where each consisted of eight candidates. The other option would be voting on "Person A" versus "Person B" to fill each of eight spots on a single slate. Under the first option, the voting is all-or-nothing: either all eight candidates in "Slate A" are victorious, or all eight candidates in "Slate B" are. Under the second option, each elected office included in the slate is decided on an individual basis, and the eight victors comprise the ultimate "slate."

candidates who ultimately appeared on Wilcox's slate, and questioned whether it made a difference that Gonzalez was not allowed to present his candidates as competitors for those positions on the slate. After extensively discussing the issue, the electoral board ultimately determined that the threshold question was whether plaintiffs had pled the issue in their objections, and found that they had not.

¶ 9     On February 8, 2021, the electoral board issued its decision on plaintiffs' objections. The electoral board first granted the motion to strike and dismiss plaintiffs' constitutional claims, finding that it lacked jurisdiction to decide constitutional issues. The electoral board also overruled plaintiffs' objections concerning the disparate treatment of candidates. The electoral board agreed with plaintiffs that "multiple candidates had in fact been permitted to nominate individuals rather than a 'full slate' whereas Gonzalez was prohibited" and further agreed that this disparate enforcement impacted the outcome of the caucus meeting. However, the electoral board found that plaintiffs had not adequately pled the claim in their objections and, as a result, the candidates were not provided adequate notice to permit them to prepare a defense to the claim.

¶ 10    On February 11, 2021, plaintiffs filed a petition for judicial review of the electoral board's decision. As relevant to the instant appeal, plaintiffs alleged that the ability to impose a "full slate" requirement on nominations was unconstitutional, and that the "full slate" requirement was applied disparately to potential nominees as opposed to the ultimately selected candidates. Specifically, plaintiffs alleged that the "full slate" requirement was unconstitutional both facially and as applied under the first and fourteenth amendments. Plaintiffs further alleged that, despite rejecting other potential nominees due to their failure to present a full slate of candidates, the ultimately selected candidates were all nominated individually. Plaintiffs

requested that the candidates' names be stricken from the ballot or, at the very least, that the Democratic Party designation should be stricken from appearing next to their names.

¶ 11        On March 5, 2021, the trial court entered an order affirming the decision of the electoral board and further found that section 45-50(b)(6) of the Township Code was constitutional. The court first found that plaintiffs lacked standing to challenge section 45-50(b)(6) because their alleged injury could not be fairly traced to the Township Code and was not redressable by challenging the statute. The court found that section 45-50(b)(6) was merely a procedural notice requirement, requiring that caucus participants be notified about whether the candidates would be selected as a slate or individually; the provision did not itself mandate the imposition of a full-slate rule. Thus, the court found that, even if the provision was found to be unconstitutional, it would have no effect on whether a caucus meeting could implement the full-slate rule but would merely remove the notice requirement. Additionally, even if plaintiffs had standing, the court found that section 45-50(b)(6) was constitutional because it was a reasonable, neutral, nondiscriminatory procedural requirement that served the Township's legitimate purposes.

¶ 12        Plaintiffs timely filed a notice of appeal. We granted plaintiffs' motion to expedite the appeal, and permitted the parties to file memoranda in lieu of briefs, on March 10, 2021.

¶ 13                                               ANALYSIS

¶ 14        On appeal, plaintiffs challenge the constitutionality of section 45-50(b)(6) of the Township Code and also argue that nomination of the candidates individually disparately impacted other potential candidates who were rejected for failing to present a full slate. We may dispose of the second issue quickly, as we agree with the electoral board that plaintiffs never included this claim in their objections. Indeed, it was the electoral board itself that first raised the issue,

not plaintiffs. "It is quite established that if an argument, issue, or defense is not presented in an administrative hearing, it is procedurally defaulted and may not be raised for the first time before the circuit court on administrative review." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008). Our supreme court has explained that "[t]he rule is based on the demands of orderly procedure and the justice of holding a party to the results of his or her conduct where to do otherwise would surprise the opponent and deprive the opponent of an opportunity to contest an issue in the tribunal that is supposed to decide it." *Cinkus*, 228 Ill. 2d at 213.

¶ 15    In the case at bar, after the parties had presented their positions in their case before the election board—and even after the parties had presented their closing arguments—the electoral board asked questions about a number of issues. One such issue raised by the electoral board concerned whether the candidates were nominated individually or as a slate, and whether the Gonzalez candidates were treated differently in not being permitted to be nominated individually. However, the electoral board ultimately concluded that the issue had not been raised in plaintiffs' objections, meaning that neither party presented the issue through their presentation, so the issue was not properly before the electoral board or part of the plaintiffs' objections. We agree with the electoral board. While the issue was technically raised prior to the issuance of the electoral board's decision, it was not raised by plaintiffs in their objections, and was not addressed by either party while they were presenting their positions. Thus, plaintiffs did not present any evidence to prove disparate treatment in the nomination of candidates, and the candidates did not have the opportunity to show that they were nominated as a slate and not as individuals. The only evidence available to the electoral board was the Zoom video of the caucus meeting, which the board members watched repeatedly in an attempt

7

to try to determine whether multiple people nominated the candidates. If the issue had been properly raised in the objections, both parties could have fully presented evidence as to the issue, and the electoral board would have had the opportunity to weigh that evidence and make specific findings. However, since it was not raised by plaintiffs, the issue was not properly before the electoral board and, similarly, cannot be now raised on appeal. See *Delay v. Board of Election Commissioners of the City of Chicago*, 312 Ill. App. 3d 206, 210 (2000) (electoral board does not have the authority to invalidate candidates' nomination papers on a ground never raised in the objection).

¶ 16    We turn, then, to plaintiffs' primary argument on appeal: the constitutionality of section 45-50(b)(6) of the Township Code. Section 45-50 is entitled "Caucus procedures," and sets forth rules governing the caucus process. Subsection (b) provides, in relevant part:

"(b) The rules of procedure shall include the following:

\* \* \*

(6) Whether candidates will be selected as a slate or as individual nominees for each office." 60 ILCS 1/45-50(b)(6) (West 2018).

Plaintiffs contend that section 45-50(b)(6) is an unconstitutional limitation on their right to vote for their chosen candidates.

¶ 17    We first consider whether plaintiffs have standing to challenge the constitutionality of section 45-50(b)(6). The doctrine of standing ensures that courts decide actual controversies and not abstract questions. *Piccioli v. Board of Trustees of Teachers' Retirement System*, 2019 IL 122905, ¶ 12. Standing requires "some injury in fact to a legally cognizable interest." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). "To have standing to challenge the constitutionality of a statute, \*\*\* one must have sustained or be in immediate

danger of sustaining a direct injury as a result of enforcement of the challenged statute." *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004). "The claimed injury must be (1) distinct and palpable; (2) fairly traceable to defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." *Chicago Teachers Union, Local 1 v. Board of Education of City of Chicago*, 189 Ill. 2d 200, 207 (2000). Questions of standing are reviewed *de novo*. *Piccioli*, 2019 IL 122905, ¶ 12. *De novo* consideration means that we perform the same analysis that a trial judge would perform. *Ramirez v. Chicago Board of Election Commissioners*, 2020 IL App (1st) 200240, ¶ 11.

¶ 18     In the case at bar, the trial court found that plaintiffs lacked standing to challenge section 45-50(b)(6) because their alleged injury could not be fairly traced to the Township Code and was not redressable by challenging the statute, as section 45-50(b)(6) was merely a notice provision and not a substantive rule. By contrast, plaintiffs contend that they have standing, because section 45-50(b)(6) deprived them of their ability to vote for their chosen candidates.

¶ 19     We find the supreme court's decision in *Carr v. Koch*, 2012 IL 113414, a case relied on by the Attorney General, to be instructive. In that case, the plaintiffs contended that the Illinois education funding system violated the equal protection clause of the Illinois Constitution. *Carr*, 2012 IL 113414, ¶ 1. The plaintiffs alleged that the funding system had the effect of requiring taxpayers in school districts with low property values to pay higher rates of property taxes than taxpayers in school districts with high property values. *Carr*, 2012 IL 113414, ¶ 10. In considering the plaintiffs' claims, the supreme court concluded that the plaintiffs lacked standing because they could not establish that their alleged injury was a direct result of the education funding statute or fairly traceable to the defendants' actions. *Carr*, 2012 IL 113414, ¶ 31. The court found that the education funding statute "is simply that: a funding statute. It is

not a taxing statute." *Carr*, 2012 IL 113414, ¶ 32. The court noted that the statute set forth a formula for determining the amount of state aid to which a school district was entitled, which included consideration of the school district's revenue from local property taxes. *Carr*, 2012 IL 113414, ¶ 33. However, the statute did not require school districts to impose any particular tax rate. *Carr*, 2012 IL 113414, ¶ 35. The supreme court found that "[t]he local property tax rate figure in the education funding statute is simply used as part of the statutory formula to determine the amount of general state aid allotted to a school district. Consequently, plaintiffs' claims that the imposition of the higher taxes is a direct result of the enforcement of the statute and is fairly traceable to defendants is too attenuated to confer standing in this case." *Carr*, 2012 IL 113414, ¶ 37.

¶ 20       In the case at bar, the statute at issue is not a funding statute as in *Carr*. However, the supreme court's analysis in *Carr* is nevertheless instructive because of its focus on the fact that the statute itself did not require the differing tax rates. Section 45-50(b)(6) similarly does not require a caucus meeting to select its candidates as a slate. Instead, section 45-50(b)(6) recognizes two options for selecting candidates—as a slate or individually—and requires that the caucus meeting rules specify which option is selected. Section 45-50(a) expressly provides that the electors participating in the caucus meeting are the ones who ultimately approve the rules. See 60 ILCS 1/45-50(a) (West 2018) ("The rules of procedure for conducting a township or multi-township caucus must be approved and may be amended by a majority vote of the qualified participants."). Indeed, we note that there was, in fact, a vote specifically on the full-slate requirement, which narrowly failed to pass. Thus, to the extent that plaintiffs were injured by the full-slate requirement, that injury was caused by their fellow electors, not by enforcement of section 45-50(b)(6). Consequently, we cannot find that plaintiffs have

sufficiently established that they have standing to challenge the constitutionality of section 45-50(b)(6) because their alleged injury was not the direct result of the enforcement of the statute. Accordingly, we have no need to consider the constitutionality of the statute and affirm the trial court's judgment as to the challenge to section 45-50(b)(6). See *People v. Mosley*, 2015 IL 115872, ¶ 11 (courts decide constitutional questions "only to the extent required by the issues in the case"); *In re E.H.*, 224 Ill. 2d 172, 178 ("cases should be decided on nonconstitutional grounds wherever possible, reaching constitutional issues only as a last resort").

¶ 21                                   CONCLUSION

¶ 22        The trial court properly determined that plaintiffs lack standing to challenge the constitutionality of section 45-50(b)(6) of the Township Code because their alleged injury was not the direct result of the enforcement of the statute.

¶ 23        Affirmed.

---

**No. 1-21-0238**

---

| | |
|---|---|
| **Cite as:** | *Srementi v. Wilcox*, 2021 IL App (1st) 210238 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2021 COEL 20; the Hon. Alfred Paul, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellants:** | Tiffany Nelson-Jaworski, of Del Galdo Law Group, LLC, of Berwyn, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Frank H. Bieszczat, Assistant Attorney General, of counsel), for appellee. |
| | Stephen Donnelly, of Parikh Law Group, LLC, of Chicago, for candidate appellees. |

---